Case 2:23-cv-00677-NPM   Document 4   Filed 08/29/23   Page 1 of 78 PageID 155

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT,
IN AND FOR LEE COUNTY, FLORIDA

CASE NO.:  _____
DIVISION:  _____

GARY WINDSOR &
KATHLEEN WINDSOR,

       Plaintiffs,

vs.

THE FIRST LIBERTY INSURANCE
CORPORATION,

       Defendant.

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiffs, GARY WINDSOR & KATHLEEN WINDSOR, ("Plaintiffs"), by and through the undersigned attorney, and files this Complaint for breach of contract against, THE FIRST LIBERTY INSURANCE CORPORATION, ("Defendant") and in support hereof, states as follows:

## THE PARTIES

1.      At all times material hereto, the Plaintiffs maintained a seasonal residence in the State of Florida.

2.      At all times material hereto, Defendant was a corporation duly licensed to transact insurance business in, and in fact transacts business in, the State of Florida.

3.      Defendant is in the business of insuring risks and properties located throughout the State of Florida.

## JURISDICTION AND VENUE

4.      Jurisdiction and venue of this matter are proper in the Circuit Court for Lee County, Florida because:

1

(i)    This is an action for damages greater than Fifty Thousand Dollars ($50,000.00) exclusive of interest, costs, and attorneys' fees, and is otherwise within the jurisdictional limits of this Court.

(ii)    Defendant is a corporation duly licensed to transact insurance business in the State of Florida;

(iii)    Defendant does business, has offices, and/or maintained agents for the transaction of its customary business in Lee County, Florida;

(iv)    The damage caused by Defendant's wrongful conduct relating to the failure to pay full value for the covered loss to Plaintiffs under the terms of the policy of insurance, for which this lawsuit seeks redress, occurred in Lee County, Florida;

(v)    the Policy at issue here was entered into in Lee County, Florida; and

(vi)    the Property insured by the Policy is located in Lee  County, Florida.

## THE POLICY

5.    Prior to the Defendant's assigned Date of Loss, September 28, 2022 ("Date of Loss"), the Plaintiffs sought and purchased homeowner's insurance from the Defendant to cover the property located at 7281 Hendry Creek Drive, Fort Myers, FL 33908, ("PROPERTY").

6.    In consideration of the premium paid to the Defendant by the Plaintiffs, Defendant issued its Policy No. H36-258-788676-40 ("POLICY") to provide insurance coverage which included, but was not limited to, coverage afforded to protect Insureds' Property against wind and hurricane damage.

7.    The Insureds' Policy was issued by the Defendant to the Insureds in Lee County, Florida and was in full force and effect as of the date of loss.

8.     A formal certified copy of the Insureds' Policy is attached. See **Exhibit "A"** Copy of Insurance Policy contract attached hereto.

9.     The Policy insures against property damage to the Property and the Policy likewise insures against loss from wind and hurricane damage.

## STATEMENT OF FACTS

10.     On September 28, 2022, the Property was damaged by a wind and hurricane event, Hurricane Ian (hereinafter "the Loss").

11.     The Policy that insured the Property was in full force and effect at the time of the Loss.

12.     Said event was a covered peril under the Policy issued by Defendant to the insured Plaintiffs.

13.     As a result of the Loss, the Plaintiffs suffered damage to the Property, which includes, but is not limited to, damage to the Property's roof assembly/system, and interior family room, living room, kitchen, and exterior of the home.

14.     The Plaintiffs promptly and timely notified Defendant of the Loss of the damage to the Property as a result of the Loss and made a claim pursuant to the Policy.  The Plaintiffs have otherwise performed all conditions precedent to recovery under the Policy and under the applicable Florida Statutes.

15.     As a result, the Defendant assigned claim number  05185644-01 to the claim.

16.     Subsequently, the Defendant named a series of adjusters as its authorized agents and representatives to Plaintiffs' claim: Eric St. John Desk Adjuster and Brian Stehle Field Adjuster for The First Liberty Insurance Corporation.

17.     At all times, the Insureds made themselves and the Property available to, and fully cooperated with the Defendant and its representatives and agents to inspect and investigate

3

the damage caused by the storm.

18.   Defendant's authorized representatives and agents, Adjusters, undertook the handling of the disposition of the claim.

19.   Defendant, through its authorized representatives and agents, Adjusters, performed an initial inspection of the Property.

20.   The Defendant acknowledged damage to the Property, made a coverage decision to afford coverage, but severely underpaid for the same. See **Exhibit "B"** Insurer Coverage Letter attached hereto.

21.   Plaintiffs contracted with a licensed public adjuster to represent their interests on the Claim.

22.   Plaintiffs have submitted reasonably priced bills and or estimates to the Defendant for this dispute for the services required by the Insureds at the Insureds' Property and have been unpaid by the Defendant for same.  See **Exhibit "C"** Insureds' selected public adjuster estimate attached hereto.

23.   Plaintiffs are unable to begin work as the Defendant has severely underpaid the claim and/or improperly denied coverage for a covered peril during the effective policy period.

24.   This is an action related to the Defendant's breach of contract and failure to pay the full value for construction services required by Plaintiffs under a residential property insurance policy.

25.    There exists a genuine, justifiable controversy between Plaintiffs and Defendant as to whether Defendant is responsible for coverage for the replacement cost of the roof on the Property caused by the wind and hurricane event, Hurricane Ian, that occurred on September 28, 2022.

26.   The Plaintiffs have exhausted every reasonable means possible to resolve this dispute with

the Defendant. With no other option, the Plaintiffs were constrained to hire legal counsel, incurring additional expenses, and file this lawsuit.

## **BREACH OF CONTRACT**

27.  Plaintiffs reallege and readopt Paragraphs 1 through 26 as if fully set forth herein and sues the Defendant for breach of contract and further states as follows:

28.  Plaintiffs are named insureds under the Policy and the Policy was in full force and effect as to the Plaintiffs and the Property at all times material to this Complaint, including when the Property was damaged on the Date of Loss.

29.  Plaintiffs have performed all conditions to Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, mitigated the property and made temporary repairs to prevents further damages to the property, or the Defendant has waived any and all other conditions.

30.  Defendant is required to compensate the Plaintiffs for all direct physical losses under the terms of the HO-3 Special Form "all-risks" residential Policy.

31.  Defendant is required to compensate the Plaintiffs for the cost to tear out and replace any part of a building necessary to replace the wind and hurricane damaged property by the terms of their original contract.

32.  Defendant's denial and refusal to pay the full amount of the claim was contrary to the terms of the Policy and/or Florida law and constitutes a breach of said contract of insurance causing further delay in restoring Plaintiffs' property to its pre-loss condition.

33.  As a direct and proximate result of Defendant's breach of said contract of insurance, Plaintiffs have been damaged by having not been compensated for the damage sustained to the Property, which is owed under the terms of the Policy.

34. Plaintiffs have been and remain fully prepared to comply with all obligations pursuant to the Policy.

35. As a direct and proximate result of Defendant's refusal to pay the Plaintiffs' claim, the Plaintiffs have been required to retain the services of the undersigned attorneys. Plaintiffs are obligated to pay a reasonable fee for the undersigned attorneys' services in bringing this action, plus necessary costs.

36. All of the foregoing conduct constitutes a breach of contract which has resulted in damages to the Plaintiffs.

37. In the event that the Plaintiffs prevail in this action, Plaintiffs are entitled to recover reasonable attorneys' fees and costs from Defendant pursuant to <u>Fla. Stat. § 627.428</u>; § 57.104, and any other relevant common law or statutory law available remedy.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury of all issues triable as a matter of right by a jury.

**WHEREFORE**, Plaintiffs request that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that Plaintiffs receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That the Court take jurisdiction over the parties and subject matter of this action;

b. That the Court enter an Order for compensatory damages for breach of contract for all unpaid and/or underpaid bills in an amount to be determined at trial with interest on any overdue payment and costs;

c. That the Court enter an Order awarding Plaintiffs attorneys' fee, prejudgment interest, and costs against Defendant pursuant to <u>Fla. Stat. § 627.428</u>; § 57.104, and any other relevant, applicable provisions of the law;

6

d.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided to the Defendant via the Chief Financial Officer as RA, Service of Process Section, 200 East Gaines Street, Tallahassee, FL 32399.

**Respectfully submitted August 2, 2023.**

**Merlin Law Group, P.A.**

**Sheldon "Donnie" Worrell, Esq.**
FL Bar No.: 1012302
DWorrell@MerlinLawGroup.com
bpadgett@merlinlawgroup.com
MERLIN LAW GROUP, P.A.
12724 Gran Bay Parkway, Suite 410
Jacksonville, FL 32258
Telephone: (904) 345-4496
Fax: (904) 345-4497
*Attorney for the Plaintiffs*

7

EXHIBIT

A



**Liberty Mutual Insurance**

350 E. 96th Street
Indianapolis, IN 46240

January 24, 2023

Eric St. John
PO Box 5014
Scranton, PA 18505-5014

Insured Name:          Gary Windsor
                       Kathleen J Windsor
Policy Number:         H3625878867640
Claim ID:              051085644
Date of Loss:          09/28/2022
Effective Date:        11/15/2021

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the The First Liberty Insurance Corporation in the usual and customary course of its business.

Sincerely,

Jeanne J.J. Brooks

Jeanne J.J. Brooks
Policy Copy Support

JB
Enclosures

| | | |
|---|---|---|
| **Questions about your Policy?**<br>Call 1-800-642-6456 | **Policy Number:**<br>H36-258-788676-40 1 1 | **Report a Claim:**<br>1-800-2CLAIMS or<br>LibertyMutual.com/Claims |

 

**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

# Policy Declarations
## The First Liberty Insurance Corporation
## Total 12 Month Premium:  $2,695.00

Through your affiliation with the Liberty Mutual Group your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Gary Windsor<br>Kathleen J Windsor | Policy Number: | H36-258-788676-40 1 1 |
| Mailing Address: | 7281 Hendry Creek Dr<br>Fort Myers FL 33908-4213 | Policy Period: | 11/15/2021-11/15/2022 12:01 a.m.<br>standard time at the  address of the<br>Named Insured at Insured Location. |
| Insured Location: | Same as Mailing address above | Declarations Effective: 11/15/2021 | |

---

#### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

| | | PREMIUM |
|---|---|---|
| · Insurance to Value Discount | $ | (171) |
| · Inflation Protection Discount | $ | (85) |
| · Safe Homeowner Program | $ | (329) |
| · Hurricane Coverage Credit | $ | (95) |
| · Windstorm Construction Features Credit | $ | (1,378) |
| · Group Savings Plus® (5% discount included in total policy premium)<br>      Liberty Mutual Group | | (Included) |
| · Protective Device Discounts:<br>      Smoke/Heat Alarm-All Floors, Extinguishers and Dead Bolt Locks | $ | (132) |
| Total Discounts and Benefits | $ | (2,190) |

**?** Want to Add a Coverage?
Call 1-800-642-6456 to talk to your agent about the availability of this coverage and whether it meets your needs.

Policy Number:
H36-258-788676-40 1 1

Report a Claim:
1-800-2CLAIMS or LibertyMutual.com/Claims

**Liberty Mutual.**
INSURANCE

# Coverage Information

### Standard Policy

| SECTION I COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| A. Dwelling | $ | 344,400 | |
| B. Other Structures on Insured Location | $ | 34,440 | |
| C. Personal Property with Replacement Cost | $ | 241,080 | |
| D. Loss of Use of Insured Location | $ | 68,880 | |

| SECTION II COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 500,000 | |
| F. Medical Payments to Others (each person) | $ | 1,000 | |

### POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

**Losses as a result of Hurricane are subject to a deductible of 2%: $6,888**

Losses as a result of Sinkhole are subject to a deductible of 10% of coverage A: $34,440

| Total Standard Policy | $ | 4,222 |
|---|---|---|

Standard premium allocated for hurricane losses: $ 1,668
Standard premium allocated for all other losses: $ 2,554

| ADDITIONAL COVERAGES | DEDUCTIBLE | | LIMITS | | PREMIUM |
|---|---|---|---|---|---|
| Personal Property Replacement Cost | | | | $ | 114 |
| Credit Card, Fund Transfer, Forgery | | $ | 1,000 | $ | 0 |
| Backup Of Sewer And Sump Pump Overflow | | $ | 5,000 | $ | 33 |
| Loss Assessment Coverage | | $ | 10,000 | $ | 7 |
| Refrigerated Property Coverage | | | | $ | 10 |
| Ordinance Or Law 25% | | | | $ | 85 |
| Emergency Service Coverage | $ 50 | $ | 400 | $ | 10 |
| Amendatory Mold End | | $ | 10,000/ 20,000 | $ | 0 |
| Coverage E increased limit | | | | $ | 26 |
| Watercraft Liability | | | | | |
| SOUTHWIND Outboard 150HP | | | | $ | 31 |
| Total Additional Coverages | | | | $ | 316 |

**Want to Add a Coverage?**
Call 1-800-642-6456 to talk to your agent about the availability of this coverage and whether it meets your needs.

Policy Number:
H36-258-788676-40 1 1

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

**Liberty Mutual.**
INSURANCE

## Coverage Information continued

| SCHEDULED PERSONAL PROPERTY | | LIMITS | | PREMIUM |
|---|---|---|---|---|
| Watercraft | | | | |
| Boat - 13 Outboard | $ | 25,000 | $ | 345 |
| Total Scheduled Personal Property | | | $ | 345 |

| OTHER CHARGES | | PREMIUM |
|---|---|---|
| Florida Emergency Management Surcharge | $ | 2.00 |
| Florida Building Code Effectiveness Grade Charge ** | $ | 0.00 |
| Total Other Charges | $ | 2.00 |

**Total 12 Month Policy Premium: $2,695.00**

### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- Home Computer and Smartphone: If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- Identity Fraud Expense: A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

### Mortgage Information

Mortgagee 1:
WELLS FARGO BANK
VICING LLC
LOAN NO. 0405753658
PO Box 100515
Florence, SC 29502

Mortgagee 2:
WELLS FARGO BANK
N.A.
ITS SUCCESSORS AND
/OR ASSIGNS
LOAN NO.
20152047900010
PO Box 621530
Atlanta, GA 30362-3030

### Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(FMHO 943 03 17)

Personal Property Replacement Cost
(FMHO 2993 0515)

Loss Assessment Coverage (FMHO-2437 05/03)

Backup Of Sewer And Sump Pump Overflow
(FMHO-1086 4/96)



| | | |
|---|---|---|
| Questions about your Policy?<br>Call 1-800-642-6456 | Policy Number:<br>H36-258-788676-40 1 1 | Report a Claim:<br>1-800-2CLAIMS or<br>LibertyMutual.com/Claims |

**Policy Forms and Endorsements:** The following forms and endorsements are applicable to your policy (continued)

| | |
|---|---|
| Watercraft (FMHO-938 05/91) | Refrigerated Property Coverage (HO 04 98 04 91) |
| Credit Card, Fund Transfer, Forgery<br>(HO 04 53 04 91) | Protective Devices (HO 04 16 04 91) |
| Power Sqdrn Cr. (FMY-226) | Ordinance Or Law (FMHO-1068) |
| Special Provisions - Florida (FMHO1067FL ▬) | Amendatory Endorsement (FMHO-2493 5/03) |
| No SecII/Limit I-Daycare (HO 04 96 04 91) | Inflation Protection (FMHO-2835 11 03) |
| Sinkhole Loss (FMHO 3286 10 11) | Amendmt Pol Definitions (FMHO2934FL 0421) |
| Amendatory Mold End (FMHO 3468 0813) | Hurricane Coverage (FMHO-2043 3/01) |
| Calendar Year Hurr Ded % (FMHO-1158 R1) | Master Endorsement (2320 10/89) |
| Lead Poisoning Exclusion (FMHO-976 05/92) | Seepage Exclusion Endorsement (FMHO ▬ 10 11) |
| Scheduled Watercraft (FMHO-696 09/97) | |

### Important Messages

Scheduled Personal Property: All personal property schedules are on file with the company. If there has been a change or addition to your scheduled property, a new copy of your personal property schedules will be provided in the endorsement section of this package.

LAW AND ORDINANCE: LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. PLEASE DISCUSS WITH YOUR INSURANCE AGENT.

FLOOD INSURANCE: YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE. YOUR HOMEOWNER'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE FOR DAMAGE RESULTING FROM FLOOD EVEN IF HURRICANE WINDS AND RAIN CAUSED THE FLOOD TO OCCUR. WITHOUT SEPARATE FLOOD INSURANCE COVERAGE, YOU MAY HAVE UNCOVERED LOSSES CAUSED BY FLOOD. PLEASE DISCUSS THE NEED TO PURCHASE SEPARATE FLOOD INSURANCE COVERAGE WITH YOUR INSURANCE AGENT.

THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.



**?** Questions about your Policy?
Call 1-800-642-6456

Policy Number:
H36-258-788676-40 1 1

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

---

Important Messages  (continued)

This policy contains a separate deductible for sinkhole losses, which may result in high out-of-pocket expenses to you. Please read it carefully.

---

Questions about your Policy?
Call 1-800-642-6456

Policy Number:
H36-258-788676-40 1 1

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims



## Additional Information

In the event of a hurricane and/or sinkhole loss, your Dwelling Coverage (Coverage A) may be automatically increased in accordance with the Inflation Protection endorsement. In these cases, a hurricane and/or sinkhole deductible that is based on a percentage of dwelling coverage would also reflect this increase.

**A rate adjustment of $0.00 is included to reflect building code effectiveness grading schedule in your area. Adjustments ranged from 2% surcharge to 1-13% credit.

LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by The First Liberty Insurance Corporation (a stock insurance company), Boston, MA.

David H. Long
President

Mark C. Touhey
Secretary

This policy, including endorsements listed above, is countersigned by:

Scott Harelson
Authorized Representative



# WATERCRAFT

**SECTION II**

For an additional premium, Coverage E - Personal Liability and Coverage F - Medical Payments to Others apply to "bodily injury" or "property damage" arising out of:

    a.  The ownership, maintenance, use, loading, or unloading of a watercraft described below;

    b.  The entrustment by an "insured" of a watercraft described below to any person; or

    c.  Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a watercraft described below.

1.  Watercraft powered by an outboard engine or motor or combination of outboard engines or motors of more than 25 total horsepower:

| | Horsepower and<br>Description * | Owner*<br>(if not you) |
|---|---|---|
| Engine or Motor A | | |
| Engine or Motor B | | |
| Engine or Motor C | | |

2.  Other watercraft, if with inboard or inboard-outdrive engine or motor power or if a sailing vessel 26 feet or more in overall length with or without auxiliary power.

    *Length and description

    *Rated speed (miles per hour)

    *Horsepower

    *Navigation Period:   from            to            (each year)

This insurance does not apply:

    a.  With respect to any watercraft while it is being operated in, or practicing for, any prearranged or organized race, speed contest or other similar competition.  However, this exclusion does not apply to sailing vessels, with or without auxiliary power, or to predicted log cruises.

    b.  With respect to watercraft with inboard or inboard-outdrive engine or motor power or sailing vessels:

        (1)  To "bodily injury" to any employee of an "insured" arising out of and in the course of employment by the "insured," if the employee's principal duties are in connection with the maintenance or use of watercraft; or

        (2)  While the watercraft is used to carry persons for a charge or is rented to others.

    *Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## REFRIGERATED PROPERTY COVERAGE

HO 04 98 04 91

For an additional premium, we insure, up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

**1.** Interruption of electrical service to the refrigeration unit.  The interruption must be caused by damage to the generating or transmitting equipment; or

**2.** Mechanical failure of the unit storing the property.

Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

This endorsement does not increase the limit of liability for Coverage C - Personal Property.

The Section I - Power Failure exclusion does not apply to this coverage.

**Special Deductible**

The following deductible applies to covered loss to refrigerated property:

We will pay only that part of the loss that exceeds $100.  No other deductible applies to this coverage.

All other provisions of this policy apply.

HO 04 98 04 91                    Copyright, Insurance Services Office, Inc., 1990                    Page 1 of 1

HOMEOWNERS
**HO 04 53 04 91**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE
**Increased Limit**

For an additional premium, the limit of liability for Additional Coverage **6.**, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money, is increased to $ _____ *.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

**HO 04 53 04 91**            Copyright, Insurance Services Office, Inc.,  1990            **Page 1 of 1**



## PREMISES ALARM OR
## FIRE PROTECTION SYSTEM

HO 04 16 04 91

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises."  You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

HO 04 16 04 91                Copyright, Insurance Services Office, Inc., 1990                Page 1 of 1



## POWER SQUADRON ENDORSEMENT A

In consideration of the premium for the policy with this endorsement attached, it is agreed that the insured is an active member of the United States Power Squadron.

LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date

For attachment
to Policy No.

Issued to

Issued                              Sales Office & No.                    End.  Serial No.

FMY-226                                                                        Page 1 of 1

FMHO 1068

HOMEOWNERS
(HO 04 77 06 94)

POLICY NUMBER:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ORDINANCE OR LAW - INCREASED AMOUNT OF COVERAGE
## FLORIDA

For the premium charged, the percentage applied to the Coverage A limit of liability under Additional Coverage **11.** Ordnance or Law, is increased from 25% to the percentage shown below.

New Total Percentage          %*

* Entry may be left blank if shown elsewhere in the policy for this coverage.

All other provisions of this policy apply.

Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

FMHO 1067FL 12 19
(HOMEOWNERS)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## SPECIAL PROVISIONS - FLORIDA

### SECTION I - PROPERTY COVERAGES

In **Deluxe Homeowners Policy**, **FMHO 943** and **Condominium Policy**, **FMHO 936**, for **Coverage A – Dwelling** and **Deluxe Homeowners Policy**, **FMHO 943**, for **Coverage B - Other Structures**, the following is added:

**Special Limits of Liability**

**Cosmetic and Aesthetic Damage to Floors**

The total limit of liability for Coverages A and B combined is $10,000 per policy term for cosmetic and aesthetic damage to floors.

    a.  Cosmetic or aesthetic damage includes, but is not limited to: chips, scratches, dents or any other damage to less than 5% of the total floor surface area and does not prevent typical use of the floor.

    b.  This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.

    c.  This limit does not increase the Coverage A or Coverage B limits of liability shown on the Declarations page.

    d.  This limit does not apply to cosmetic or aesthetic floor damage caused by a Peril Insured Against as named and described for COVERAGE C - PERSONAL PROPERTY.

### COVERAGE C - PERSONAL PROPERTY

**Special Limits of Liability**

Items **10.** and **11.** are deleted and replaced by the following:

**10.** $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a.  Accessories and antennas; or

    b.  Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this item **10**.

**11.** $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a.  Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b.  Is away from the "residence premises"; and

    c.  Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:

    a.  Accessories and antennas; or

    b.  Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this item **11.**

**Property Not Covered.**

Item **3**.b. is deleted and replaced by the following:

**3.**   Motor vehicles or all other motorized land conveyances. This includes:

b.   Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of "motor vehicles" or all other motorized land conveyances.

Electronic apparatus includes:

(1)  Accessories and antennas; or

(2)  Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **3**.b.

The exclusion of property described in **3**.a. and **3**.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a.   Used to service an "insured's" residence; or

b.   Designed for assisting the handicapped;

## COVERAGED - Loss of Use

In **Homeowners Policy**, **FMHO 952**, and **Deluxe Homeowners Policy**, **FMHO 943**, item **1**. is deleted and replaced by the following:

**1.**   If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

In **Tenants Policy**, **FMHO 954**, and **Condominium Policy**, **FMHO 936**, item **1**. is deleted and replaced the following:

**1.**   If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

## SECTION I - ADDITIONAL COVERAGES

In **Homeowners Policy**, **FMHO 952**, **Deluxe Homeowners Policy**, **FMHO 943**, and **Condominium Policy**, **FMHO 936**, item **2**. is deleted and replaced by the following:

**2.   Reasonable Emergency Measures**.

a.   We will pay up to the greater of $3,000 or 1% of your Coverage A limit of liability for the reasonable costs incurred by you for necessary measures taken solely to protect covered property from further damage, when the damage or loss is caused by a Peril Insured Against.

b.   We will not pay more than the amount in a. above, unless we provide you approval within 48 hours of your request to us to exceed the limit in a. above. In such circumstance, we will pay only up to the additional amount for the measures we authorize.

If we fail to respond to you within 48 hours of your request to us and the damage or loss is caused by a Peril Insured Against, you may exceed the amount in a. above only up to the cost incurred by you for the reasonable emergency measures necessary to protect the covered property from further damage.

FMHO 1067FL 12 19          Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.          Page 2 of 14

eFiled Lee County Clerk of Courts Page 22

c.  If however, a covered loss occurs during a "Hurricane", the amount we pay under this additional coverage is not limited to the amount in a. above.

   **"Hurricane" described**.

   (1)  A hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.

   (2)  A hurricane occurrence:

      (a)  Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service; and

      (b)  Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

d.  A reasonable measure under this Additional Coverage **2.** may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.

e.  This coverage does not:

   (1)  Increase the limit of liability that applies to the covered property.

   (2)  Relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION **2.**;

   (3)  Pay for property not covered, or for repairs resulting from a peril not covered, or for loss excluded in this Policy.

In **Condominium Policy**, **FMHO 936**, item **7.** is deleted and replaced by the following:

**7.  Loss Assessment**. We will pay up to $2000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during, or after a volcanic eruption. A $250 deductible shall apply, unless another deductible was or will be applied to other property loss that resulted from the same property loss being assessed. In that case no deductible for loss assessment will be applied.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $2,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. Regardless of the number of assessments, the limit of $2,000 is the most we will pay as a result of the same direct loss to property. The maximum amount that will be paid for an assessment for any loss is equal to your unit owner's coverage limit in effect one day before the date of occurrence. Any changes to coverage limits made on or after the day before the date of occurrence are not applicable to such loss.

Condition 1. Policy Period, under SECTIONS I and II CONDITIONS, does not apply to this coverage.

In **Homeowners Policy**, **FMHO 952**, and **Deluxe Homeowners Policy**, **FMHO 943**, item **8.**b. is deleted and replaced by the following:

b.  **Hidden decay**. However, **8.**b. does not provide coverage for a plumbing system or any part of a plumbing system resulting from decay, unless the plumbing system or part of the plumbing system is damaged by a collapse of a building, or any part of a building.

In **Condominium Policy**, **FMHO 936**, item **8.** is deleted and replaced by the following:

**8.  Collapse**. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused by one or more of the following:

a.  Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

FMHO 1067FL 12 19          Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.          Page 3 of 14

eFiled Lee County Clerk of Courts Page 23

b.   Decay, of a building or any part of a building that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

c.   Hidden insect or vermin damage;

d.   Weight of contents, equipment, animals or people;

e.   Weight of rain which collects on a roof; or

f.   Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

The coverage provided under this Additional Coverage - Collapse, applies only to abrupt collapse.

For the purposes of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

Item **9.** is deleted and replaced by the following:

**9.   Glass or Safety Glazing Material**.

a.   We cover:

(1)   The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2)   The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and

(3)   The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b.   This coverage does not include loss:

(1)   To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2)   On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage 9. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

The following ADDITIONAL COVERAGE is added:

**11.   Ordinance or Law**.

a.   You may use up to the percentage shown on your policy Declarations that applies to COVERAGE A - DWELLING (or, for **Tenant Policy**, **FMHO 954**, you may use up to the percentage shown on the Declarations that applies to Building Additions and Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1)   The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

    (2) The demolition and reconstruction of the undamaged part of a covered building or other structure when that building or other structure must be totally demolished because of damage by a PERIL INSURED AGAINST to another part of that covered building or other structure; or

    (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a PERIL INSURED AGAINST.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

    (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    (2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

    Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage 10. in **Condominium Policy, FMHO 936**.)

## SECTION I - PERILS INSURED AGAINST

In **Homeowners Policy**, **FMHO 952**, **Deluxe Homeowners Policy**, **FMHO 943**, and **Condominium Policy**, **FMHO 936**, the following is added:

### Catastrophic Ground Cover Collapse

a. We insure for direct physical loss solely to the "covered dwelling", including the foundation, caused by the peril of "catastrophic ground cover collapse".

"Covered dwelling" means the stand-alone structure, or unit for HO 00 06 forms, covered under Coverage A, that you reside in as your residence, including an attached garage. This definition does not extend to any structures that are attached to the livable square footage of this stand-alone structure, including, but not limited to, patios, walkways, sidewalks, fences, screen enclosures, pavement, decks, porches, lanais, driveways, carports, pools, spas, gazebos, etc., unless the structure is under the same roofline or of the same foundation line and of the same depth as the "covered dwelling". Under no circumstance will it extend beyond the unit for **Condominium Policy**, **FMHO 936**.

"Catastrophic ground cover collapse" is geological activity that results in all of the following:

(1) The abrupt collapse of the ground cover;

(2) A depression in the ground cover clearly visible to the naked eye;

(3) "Structural damage" to the "covered dwelling," including the foundation; and

(4) The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

"Structural damage" as defined means the "covered dwelling", that regardless of the date of its construction, has experienced the following:

    i. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

FMHO 1067FL 12 19          Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.          Page 5 of 14

eFiled Lee County Clerk of Courts Page 25

      ii.  Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 of the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third of the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

      iii.  Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

      iv.  Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

      v.  Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

    "Primary structural member" as used above means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

    "Primary structural system" as used above means an assemblage of "primary structural members".

  b.  Contents coverage and additional living expenses apply only if there is a loss resulting from "catastrophic ground cover collapse".

(This is Peril Insured Against 17. Under COVERAGE C - PERSONAL PROPERTY in **Deluxe Homeowners Policy**, **FMHO 943** and SECTION I - PERILS INSURED AGAINST 17. in **Homeowners Policy**, **FMHO 952** and **Condominium Policy**, **FMHO 936**.)

Item **1.** under COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES (**Deluxe Homeowners Policy**, **FMHO 943** only) is deleted and replaced by the following:

**1.**  Involving Collapse, including any of the following conditions of property or any part of the property, whether above or below the ground:

  a.  An abrupt falling down or caving in;

  b.  Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

  c.  Any spalling, crumbling, settling, cracking, shifting, bulging, racking, sagging, bowing, bending, leaning, shrinkage or expansion, or any other age or maintenance related issues, as such condition relates to a. or b. above;

except as provided in Additional Coverages 8.

The final paragraph in item **2.**e. under COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES (**Deluxe Homeowners Policy**, **FMHO 943** only) is deleted and replaced by the following:

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost to tear out and repair only that part of a building or only that part of an other structure covered under Coverage A or B, on the 'residence premises', necessary to access the system or appliance.

We do not cover loss to the system or appliance from which this water escaped.

In **Condominium Policy**, **FMHO 936**, item **12.** is deleted and replaced by the following:

**12. Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. We also pay for tearing out and replacing only that part of the building which is covered under Coverage A and at the location of the "residence premises", if necessary to repair the system or appliance from which the water or steam escaped.

This peril does not include loss:

a.  On the "residence premises", if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

b.  To the system or appliance from which the water or steam escaped;

c.  Caused by or resulting from freezing except as provided in the peril of freezing below; or

d.  On the "residence premises" caused by accidental discharge or overflow which occurs away from the building where the "residence premises" is located.

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

In **Homeowners Policy**, **FMHO 952**, item **12.** is deleted and replaced by the following:

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. We also pay for tearing out and replacing only that part of the building on the "residence premises" necessary to repair the system or appliance from which the water or steam escaped.

This peril does not include loss:

a.  On the "residence premises", if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

b.  To the system or appliance from which the water or steam escaped;

c.  Caused by or resulting from freezing except as provided in the peril of freezing below; or

d.  On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises".

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

## SECTION I - EXCLUSIONS

Item **1.** is deleted and replaced by the following:

1. **Ordinance or Law**, meaning any ordinance or law:

a.  Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion **1.a.** does not apply to the amount of coverage that may be provided for under ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

b.  The requirements of which result in a loss in value to property; or

c.  Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is exclusion **1.a.** in **Deluxe Homeowners Policy**, **FMHO 943**.)

Item **2.** is deleted and replaced by the following:

2. **Earth Movement**, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; sinkhole; mudflow; earth sinking, rising or shifting; unless direct loss by:

a.  Fire; or

b.  Explosion

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft or "Catastrophic Ground Cover Collapse".

(This is exclusion **1.**b. in **Deluxe Homeowners Policy**, **FMHO 943**.)

Item **4.** is deleted and replaced by the following:

**4.** **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the "residence premises", we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

(This is exclusion **1.**d. in **Deluxe Homeowners Policy**, **FMHO 943**.)

## SECTION I - CONDITIONS

In **Homeowners Policy**, **FMHO 952**, **Deluxe Homeowners Policy**, **FMHO 943**, and **Condominium Policy**, **FMHO 936**, item **2.** is deleted and replaced by the following:

**2.** **Your Duties After Loss**. In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

a. Give prompt notice to us or your insurance agent.

Except for Reasonable Emergency Measures taken under Additional Coverages 2., there is no coverage for repairs that begin before the earlier of:

(1) 72 hours after we are notified of the loss;

(2) The time of loss inspection by us; or

(3) At the time of other approval by us;

Any claims, including but not limited to, initial, supplemental, and reopened claims, under an insurance policy that provides coverage for windstorm or hurricane damage, are barred unless notice of the claim, supplemental claim, or reopened claim, was given to us in accordance with the terms of the policy within 3 years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage, or within 5 years from the date of loss for losses other than hurricanes, windstorms or sinkholes.

For purposes of this section, the terms "supplemental claim" or "reopened claim" means any additional claim for recovery from us for losses from the same loss which we had previously adjusted pursuant to the initial claim.

b. (1) To the degree reasonably possible, retain the damaged property; and

(2) Allow us to inspect, subject to b.(1) above, all damaged property prior to its removal from the "residence premises";

c. Notify the police in case of loss by theft;

d. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

e. Protect the covered property from further damage. The following must be performed:

(1) Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage 2.; and

(2) Keep an accurate record of repair expenses.

A reasonable emergency measure under e.(1) above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.

f. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

FMHO 1067FL 12 19          Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.          Page 8 of 14

eFiled Lee County Clerk of Courts Page 28

g.  As often as we reasonably require:

(1)  Show the damaged property to the extent reasonably possible;

(2)  Provide us with records and documents we request and permit us to make copies; and

(3)  You and your representative, including any public adjuster engaged or acting on your behalf, must submit to recorded statements and examinations under oath as often as we reasonably require, within 60 days of the date of our request to do so. Your statements and examinations under oath will be conducted while not in the presence of any other "insured" or representative of an "insured", including a public adjuster. The statements and examinations under oath of your representative, including a public adjuster, will be conducted while not in the presence of any "insured". All recorded statements and examinations under oath must be signed by the person providing the statement or the person being examined. The person providing the statement or being examined must also provide us with records and documents that we request and permit us to make copies.

(4)  The attorney representing the "insured" may always be present under the circumstances described in this condition.

h.  Send to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1)  The time and cause of loss;

(2)  The interest of the "insured" and all others in the property involved and all liens on the property;

(3)  Other insurance which may cover the loss;

(4)  Changes in title or occupancy of the property during the term of the policy;

(5)  Specifications of damaged buildings and detailed repair estimates;

(6)  The inventory of damaged personal property described in 2.f. above;

(7)  Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8)  Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

i.  Your representative, including any public adjuster engaged or acting on your behalf, may not act or fail to reasonably act in any manner that obstructs or prevents us or our adjuster from conducting an inspection of any part of the insured property for which there is a claim for loss or damage in a timely manner.

The duties above apply regardless of whether you, an "insured" seeking coverage, or a representative of either retains or is assisted by a party who provides legal advice, insurance advice or expert claim advice, regarding an insurance claim under this Policy.

In **Tenant Policy**, **FMHO 954**, item **2.** is amended by the following:

a.  You, or your representative, including any public adjuster engaged or acting on your behalf, must give prompt notice to us or our agent.

Any claims, including, but not limited to, initial, supplemental, and reopened claims, under an insurance policy that provides coverage for windstorm or hurricane damage, are barred unless notice of the claim, supplemental claim or reopened claim, was given to us in accordance with the terms of the policy within 3 years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage, or within 5 years from the date of loss for losses other than hurricanes, windstorms or sinkholes.

For purposes of this section, the terms "supplemental claim" or "reopened claim" means any additional claim for recovery from us for losses from the same loss which we had previously adjusted pursuant to the initial claim.

Item f.(1) is deleted and replaced by the following:

(1)  Show the damaged property to the extent reasonably possible;

FMHO 1067FL 12 19          Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.          Page 9 of 14

eFiled Lee County Clerk of Courts Page 29

Items f. (4) and (5) are added:

    (4)   You and your representative, including any public adjuster engaged or acting on your behalf, must submit to recorded statements and examinations under oath as often as we reasonably require, within 60 days of the date of our request to do so. Your statements and examinations under oath will be conducted while not in the presence of any other "insured" or representative of an "insured", including a public adjuster. The statements and examinations under oath of your representative, including a public adjuster, will be conducted while not in the presence of any "insured". All recorded statements and examinations under oath must be signed by the person providing the statement or the person being examined. The person providing the statement or being examined must also provide us with records and documents that we request and permit us to make copies.

    (5)   The attorney representing the "insured" may always be present under the circumstances described in this condition.

The beginning paragraph of item g. is deleted and replaced by the following:

    Send to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

Item h. is added:

h.   Your representative, including any public adjuster engaged or acting on your behalf, may not act or fail to reasonably act in any manner that obstructs or prevents us or our adjuster from conducting an inspection of any part of the insured property for which there is a claim for loss or damage in a timely manner.

**3.  Loss Settlement.**

In **Homeowners Policy**, **FMHO 952** and **Deluxe Homeowners Policy**, **FMHO 943**, items b.(4) and (5) are deleted and replaced by the following:

b.  (4)   We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred. We will not require you to advance payment for such repairs or expenses, with the exception of incidental expenses to mitigate further damage, subject to the provisions of SECTION I - CONDITIONS, Your Duties After Loss, item **2.**e.

        If a total loss of the covered dwelling occurs, we shall pay the replacement cost coverage without reservation or holdback of any depreciation in value, subject to the policy limits.

In **Condominium Policy**, **FMHO 936**, items b.(1) and (2) are deleted and replaced by the following:

b.  **Coverage A - Dwelling**

    (1)   At the actual cost to repair or replace;

    (2)   We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred. We will not require you to advance payment for such repairs or expenses, with the exception of incidental expenses to mitigate further damage, subject to the provisions of SECTION I - CONDITIONS, Your Duties After Loss, item **2.e.**

    If a total loss of the covered dwelling occurs, we shall pay the Replacement cost coverage without reservation or holdback of any depreciation in value, subject to the policy limits.

Item **6.** is deleted and replaced by the following:

**6.  Mediation or Appraisal.**

a.   If either you or a third party who is an assignee of benefits under the Policy and we are engaged in a dispute regarding a claim under this Policy, either you, the third-party assignee or we may request a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. However, we are not required to participate in any mediation requested by a third-party assignee. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. If the dispute is mediated, the settlement in the course of the mediation is binding only if both parties agree, in writing on a settlement and, you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

Mediation will not apply to any claim in which we have a reasonable basis to suspect fraud; or where based on agreed-upon facts as to the cause of the loss, there is no coverage under this policy.

b.  If you and we fail to agree on the amount of loss, either party may request an appraisal of the loss. However, both parties must agree to the appraisal. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

(1)  Pay its own appraiser; and

(2)  Bear the other expenses of the appraisal and umpire equally.

In **Condominium Policy**, **FMHO 936**, items **7.** and **8.** are deleted and replaced by the following:

**7.  Other Insurance**. If a loss covered by this policy is also covered by other insurance covering the same property this insurance will be excess over the amount recoverable under such other insurance. However, if a loss covered by this policy is covered by other insurance covering the same property and such other insurance is excess insurance over the amount recoverable under any other policy covering the same property, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of such insurance covering the loss.

**8.  Suit Against Us**. No action can be brought unless the policy provisions have been complied with and the action is started within 5 years after the date of loss.

The following is added to item **9.**:

If at the time of loss, the Personal Property Replacement Cost Endorsement is made part of this Policy, we will pay the amount of loss as noted in that endorsement.

**10.**  is deleted and replaced by the following:

**10.  Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable upon the earliest of:

a.  20 days after we receive your proof of loss and reach written agreement with you; or

b.  60 days after we receive your proof of loss and:

(1)  There is an entry of a final judgment; or

(2)  There is a filing of a mediation settlement with us.

c.  Within 90 days after we receive notice of an initial, reopened or supplemental property insurance claim from you, we shall pay or deny such claim unless failing to pay such claim is caused by factors beyond the control of us which reasonably prevent such payment.

## SECTION II - EXCLUSIONS

Under **1. Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others**, items a. and l. are deleted and replaced by the following:

a.  Which is expected or intended by one or more "insureds";

l.  Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

FMHO 1067FL 12 19          Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.          Page 11 of 14

eFiled Lee County Clerk of Courts Page 31

(This is exclusion **E.9.** in **Farmers Personal Liability Endorsement**, **HO 24 73**.)

**SECTIONS I AND II - CONDITIONS**

Item **2.** is deleted and replaced by the following:

**2.  Concealment or Fraud**.

   a.  Under SECTION I - PROPERTY COVERAGES, with respect to all "insureds" covered under this policy, we may not provide coverage for loss under SECTION I - PROPERTY COVERAGES if, whether before or after a loss, one or more "insureds" have:

   (1)  Intentionally concealed or misrepresented any material fact or circumstance;

   (2)  Engaged in fraudulent conduct; or

   (3)  Made material false statements;

   relating to this insurance.

   b.  Under Section II - LIABILITY COVERAGES, we may not provide coverage to one or more "insureds" who, whether before or after a loss, have:

   (1)  Intentionally concealed or misrepresented any material fact or circumstance;

   (2)  Engaged in fraudulent conduct; or

   (3)  Made material false statements;

   relating to this insurance.

   However, we will not deny a claim based on credit information available in public records, whether disclosed or undisclosed, if the policy has been in effect for more than ninety (90) days.

Under **5. Cancellation**, items b. through d. are deleted and replaced by the following:

Paragraph e. is added. Paragraphs b., c., and d. are deleted and replaced by the following:

   b.  When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

   c.  We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1)  When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect. We will reinstate your policy provided that cancellation for nonpayment of premium occurs due to a lender's failure to pay the policy premium.

   (2)  When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

   (a)  On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

   (b)  On the sole basis of filing a single claim resulting from water damage unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

   (c)  Based on the lawful use, possession, or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

Except as provided in items **5.**b. and **5.**c.(1) above, we will let you know of our action at least 20 days before the date cancellation takes effect.

(3)   When this policy has been in effect for more than 90 days, we may cancel:

    (a)   If there has been a material misstatement;

    (b)   If the risk has changed substantially since the policy was issued;

    (c)   In the event of failure to comply, within 90 days of the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

    (d)   If the cancellation is for all "insureds" under policies of this type for a given class of "insureds";

    (e)   On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

    (f)   On the basis of filing a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

(4)   When this policy has been in effect for more than 90 days, we may not cancel:

    (a)   On the basis of credit information available in public records;

    (b)   On the basis of lawful use, possession or ownership of a firearm or ammunition by you, an "insured" or member of your household.

This can be done by letting you know at least 120 days before the date cancellation takes effect. If more than one notice requirement applies, we will provide the broadest notice.

However, such 120 day notice does not apply when the cancellation is due to nonpayment of premium.

Proof of mailing will be sufficient proof of notice.

d.   When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

e.   If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 working days after the date cancellation takes effect.

An insurer that cancels a property insurance policy on property secured by a mortgage due to the failure of the lender to timely pay the premium when due shall reinstate the policy as required by Section 501.137, Florida Statutes.

Item **6.** is deleted and replaced by the following:

**6.   Nonrenewal**. We may elect not to renew this policy. However, we will not nonrenew this policy:

a.   On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

b.   On the basis of filing a single claim resulting from water damage unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

c.   Based on the lawful use, possession, or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

d.   On the basis of filing of claims for loss caused by sinkhole damage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may elect not to renew this policy if:

    (1)   The total of such property claim payments equal or exceed the policy limits of coverage in effect on the date of loss for "property damage" to the covered building, as set forth on the declarations page; or

    (2)   You have failed to repair the structure in accordance with the engineering recommendations of the professional engineer retained by us upon which any loss payment or policy proceeds were based.

FMHO 1067FL 12 19                Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.                Page 13 of 14

eFiled Lee County Clerk of Courts Page 33

e.   On the basis of credit information available in public records.

We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal, at least 120 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

In **Condominium Policy**, **FMHO 936**, the following is added to the opening paragraph of item **8.**:

However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the "residence premises" is located.

The following conditions are added:

10.  **Notice**. A company employee adjuster, independent adjuster, attorney, investigator, or other persons acting on behalf of us that need access to an "insured" or claimant or to the insured property that is the subject of a claim must provide at least forty eight (48) hours' notice to the "insured" or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property.

The "insured" or claimant may deny access to the property if notice is not provided. The "insured" or claimant may waive the forty-eight (48) hour notice.

11.  **Renewal Notification**. If we elect to renew this policy, we will let you know, in writing:

a.   Of our decision to renew this policy; and

b.   The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

All other provisions of this policy apply.



# AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY**

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

**SECTION I - PROPERTY COVERAGES**

**COVERAGE A - Dwelling**
Item 1. is amended as follows:
We cover:
1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

**COVERAGE C - Personal Property**

The introductory paragraph of **Special Limits of Liability** is amended to read:

These do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.

The following limits are added:
12. $5000 on electronic data processing system equipment and the recording or storage media or accessories used with that equipment.

13. $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

14. $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

15. $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

**Property Not Covered** under **COVERAGE C - Personal Property**

The final two subparagraphs of Item 3 (a. and b.) are replaced by the following:

We do cover vehicles or conveyances not subject to motor vehicle registration which are:
a. Used solely to service an "insured's" residence; or
b. Designed for assisting the handicapped;

Item 10. is added as personal property items not covered.
10. Water or steam

**ADDITIONAL COVERAGES** is revised as follows:

Item 7. **Loss Assessment** is deleted in its entirety.

The following is added to Item 8. **Collapse.**
   With respect to this Additional Coverage:
   (1) Collapse means the sudden and entire falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied or used for its current intended purpose.
   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
   (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.
   (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Item 10. **Landlord's Furnishings** is deleted in its entirety.

**SECTION I - PERILS INSURED AGAINST**

**COVERAGE A - DWELLING and COVERAGE**



**B - OTHER STRUCTURES**
The following is added to item **2.b.**
    (4) Footing(s)

The following are added to item **2.e**. Any of the following:
    (10) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
The final paragraph of Item 2. is further revised as follows:
If any of these cause sudden and accidental water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

**SECTION II - EXCLUSIONS**

Item **1.a.** under **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** is amended as follows:

Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage"
    (1) is of a different kind, quality, or degree than initially expected or intended; or
    (2) is sustained by a different person, entity, real or personal property, than initially expected or intended.
However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**SECTION II - ADDITIONAL COVERAGES**
Item **1.c** . under **Claims Expenses** is amended as follows:

Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit.

Item **4. Loss Assessment** is deleted in its entirety.

All other policy terms and conditions apply.



## <u>NO</u> SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## <u>LIMITED</u> SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE
## BUSINESS

HO 04 96 04 91

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion **1.b.** of Section II - Exclusions;

2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item **8.** imposes that limit on "business" property on the "residence premises." (Item **8.** corresponds to item **5.** in Form **HO 00 08.**);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item **9.** imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item **9.** does not apply to adaptable electronic apparatus as described in Special Limit of Liability items **10.** and **11.** (Items **9., 10.** and **11.** correspond to items **6., 7.** and **8.** respectively in Form **HO 00 08.**)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

 Copyright, Insurance Services Office, Inc., 1990



# INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

> Coverage A, Dwelling;

> Coverage B, Structure;

> Coverage C, Personal Property;

> and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

## METHOD

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

> a.   The policy; or

> b.   The most recent Homeowners Policy Renewal Declaration.

This Endorsement must be attached to Change Endorsement when issued after the policy is written.

---

FMHO 2835 (Ed. 11/03)                    Liberty Mutual Insurance Group                    Page 1 of 1



**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY**

## HOMEOWNER AMENDATORY ENDORSEMENT

**DEFINITIONS**

The following is added:

"Actual cash value"

a. When damage to property is economically repairable, "actual cash value" means the cost that would be necessary to repair the damage based on the age and conditions of the materials making up the damaged property, less reasonable deduction for wear and tear, deterioration, and obsolescence.

b. When damage to property is not economically repairable or loss prevents repair, "actual cash value" means the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

c. Otherwise, "actual cash value" means the market value of new, identical, or nearly identical property, less reasonable deduction for wear and tear, deterioration, and obsolescence.

The reasonable deduction in items (a) and (c), above, will apply to materials, labor, and overhead and profit.

Where the term actual cash value is stated in the policy and any endorsements attached to the policy, this Definition of "actual cash value" applies.

All other provisions of this policy apply.

eFiled Lee County Clerk of Courts Page 39

# "SINKHOLE LOSS" COVERAGE - SECTION 1 PROPERTY

## FMHO 3286 10 11

---

(FOR USE WITH FORMS HO 00 02, HO 00 03 and HO 00 06)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**DEFINITIONS**

The following definitions are added for purposes of this endorsement only:

1. "Sinkhole loss" means "structural damage" solely to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, including the foundation, arising out of or caused by "sinkhole activity". Contents coverage and additional living expenses apply only if there is "structural damage" to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, caused by "sinkhole activity". The definition for "sinkhole loss" does not include damage to anything other than the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence.

2. "Structural damage" means the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, regardless of the date of its construction, has experienced the following:

   - Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

   - Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third of the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

   - Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

   - Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems," being significantly likely to imminently collapse

Page **1** of **7**                                                                 **FMHO 3286 10 11**

because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

- Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

"Primary structural member" as used above means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.  "Primary structural system" as used above means an assemblage of "primary structural members."

3. "Sinkhole activity" means settlement or systematic weakening of the earth supporting the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

4. "Professional engineer" means a person, as defined in Florida statute 471.005, who has a bachelor's degree or higher in engineering.  A "professional engineer" must also have experience and expertise in the identification of "sinkhole activity" as well as other potential causes of "structural damage."

5. "Covered dwelling", as used in this endorsement, means the stand-alone structure, or unit for HO 00 06 forms, covered under this policy that you reside in, including an attached garage.  This definition does not extend to any structures that are attached to the livable square footage of this stand-alone structure, including, but not limited to, patios, walkways, sidewalks, fences, screen enclosures, pavement, decks, porches, lanais, driveways, carports, pools, spas, gazebos, etc., unless the structure is under the same roofline or foundation line and depth as the "covered dwelling".  Under no circumstance will it extend beyond the unit for HO 00 06 forms.

6. "Neutral evaluation" means the alternative dispute resolution provided in Florida statute 627.7074.

7. "Neutral evaluator" means a "professional engineer" or a professional geologist who has completed a course of study in alternative dispute resolution designed or approved by the Department of Financial Services (referred to as department from here on) for use in the "neutral evaluation" process and who is determined by the department to be fair and impartial.

## "SINKHOLE LOSS" COVERAGE

Subject to the coverage and terms of this policy, we insure for direct physical loss to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, that occurs during the policy period and is caused by a "sinkhole loss", including the cost incurred to:

1. Stabilize the land in accordance with the recommendation of Liberty Mutual's selected "professional engineer" and the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence; and,

2. Repair the foundation in accordance with the recommendations of Liberty Mutual's selected "professional engineer" who verifies the presence of a "sinkhole loss" with notice to you, subject to the coverage and terms of the policy.

eFiled Lee County Clerk of Courts Page 41

**Deductible:**  This coverage will be subject to a deductible in an amount that is equal to 10% of your policy's **Coverage A** amount shown in the declarations page.

## SECTION I - EXCLUSIONS

With respect to coverage provided by this endorsement:

1. The **Section I - Earth Movement** exclusion does not apply with respect to coverage provided by this endorsement.

## SECTION I - CONDITIONS

2. **Your Duties After Loss**

Item 2.a.(1) is added:

2. a.(1) Any claim, including, but not limited to, initial, supplemental, and reopened claims under an insurance policy that provides sinkhole coverage is barred unless notice of the claim was given to us in accordance with the terms and conditions of the policy within 2 years after you  knew or reasonably should have known about the "sinkhole loss."

3. **Loss Settlement**

With respect to a loss to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, caused by a "sinkhole loss", Item **3.b.(5)** is added:

3.b.(5) Subject to the Deductible provision appearing under the heading "SINKHOLE LOSS" COVERAGE,

(a) We will pay no more than the actual cash value, less the deductible, of the "sinkhole loss," not including underpinning or grouting or any other repair technique performed below the existing foundation of the "covered dwelling," until you enter into a contract for the performance of building stabilization or foundation repairs in accordance with the recommendations set forth in Liberty Mutual's engineer's report issued pursuant to Florida statute 627.7073.

(b) You must enter into a contract for the performance of building stabilization or foundation repairs, in accordance with the recommendation of Liberty Mutual's selected "professional engineer", within 90 days after we confirm coverage for the "sinkhole loss" and notify you of such confirmation. This time period is tolled if either party invokes the "neutral evaluation" process, and begins again 10 days after the conclusion of the "neutral evaluation" process.

(c) After you enter into such contract for the performance of building stabilization and foundation repairs, we will settle the loss as described in this Condition and pay the amounts necessary to begin and perform such repairs as work is performed and as expenses are incurred.

(d) The stabilization and all other repairs to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence,  and contents must be completed within 12 months after entering into the contract for repairs described above unless:

Page **3** of **7**                                                                                       **FMHO 3286 10 11**

(i) There is mutual agreement between us and you;

(ii) The claim is involved with the "neutral evaluation" process;

(iii) The claim is in litigation; or

(iv) The claim is under "neutral evaluation" or mediation.

**(e)** If the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, suffers a "sinkhole loss," you must repair such damage or loss in accordance with Liberty Mutual's "professional engineer's" recommended repairs. However, if the repairs have begun and the "professional engineer" selected or approved by Liberty Mutual determines that the recommended repairs cannot be completed within the policy limits, we will either:

**(i)** Pay to complete the repairs recommended by Liberty Mutual's "professional engineer"; or

**(ii)** Tender the Coverage A policy limits to the policyholder without a reduction for the repair expenses incurred.

**(f)** You may not accept a rebate from any person performing the required repairs. If you receive a rebate, coverage is void and you must refund the amount of the rebate to us.

**(g)** As a pre-condition to accepting payment for a "sinkhole loss," you must file a copy of any sinkhole report regarding the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, which was prepared on your behalf or request, with the county clerk of court. You shall bear the cost of filing and recording the report.

**(h)** If we determine there is no "sinkhole loss" without performing testing, you may demand testing in writing within 60 days after your receipt of our claim denial. You will be required to pay the lesser of 50% of the actual costs of the analyses and services provided under Florida statutes 627.7072 and 627.7073 or $2,500. We will reimburse you for the entire cost of these tests if we obtain written certification that there is a "sinkhole loss."

**(i)** If we obtain, pursuant to Florida statutes 627.7073, written certification that there is no "sinkhole loss" or that the cause of the damage was not "sinkhole activity", and if you submitted the sinkhole claim without good faith grounds for submitting such claim, you shall reimburse us for 50 percent of the actual costs of the analyses and services provided under Florida statutes 627.7072 and 627.7073; however, you are not required to reimburse us more than $2,500 with respect to any claim. You are required to pay reimbursement under this subsection only if you requested the analysis and services provided under Florida statutes 627.7072 and 627.7073 and we, before ordering the analysis under Florida statute 627.7072, inform you in writing of your potential liability for reimbursement and give you the opportunity to withdraw the claim.

**6. Appraisal** is deleted and replaced by the following:

eFiled Lee County Clerk of Courts Page 43

**6. Neutral Evaluation.**  For sinkhole claims "neutral evaluation" takes the place of any previous Mediation conditions in Section I - Conditions 6a. "Neutral evaluation" is available to either party if a sinkhole report has been issued pursuant to Florida statute 627.7073.

Following the receipt of the sinkhole report or the denial of a claim for a "sinkhole loss," we shall notify you of your right to participate in the "neutral evaluation" program.  We shall provide to you the consumer information pamphlet prepared by the department as defined in Florida statutes.

**a.** "Neutral evaluation" is nonbinding, but mandatory if requested by either party. A request for "neutral evaluation" may be filed with the department by you or us on a form approved by the department. The request for "neutral evaluation" must state the reason for the request and must include an explanation of all the issues in dispute at the time of the request.  Filing a request for "neutral evaluation" tolls the applicable time requirements for filing suit for 60 days following the conclusion of the "neutral evaluation" process or 5 years, whichever is later.

**b.** At a minimum, "neutral evaluation" must determine:

**(1)** Causation;

**(2)** All methods of stabilization and repair both above and below ground;

**(3)** The costs for stabilization and all repairs; and

**(4)** The information necessary to carry out **6f**.

**c.** "Neutral evaluation" shall be conducted as an informal process in which formal rules of evidence and procedure need not be observed. A party to "neutral evaluation" is not required to attend "neutral evaluation" if a representative of the party attends and has the authority to make a binding decision on behalf of the party. All parties shall participate in the evaluation in good faith. The "neutral evaluator" must be allowed reasonable access to the interior and exterior of insured structures to be evaluated or for which a claim has been made. Any reports initiated by the policyholder, or an agent of the policyholder, confirming a "sinkhole loss" or disputing another sinkhole report regarding insured structures must be provided to the "neutral evaluator" before the evaluator's physical inspection of the insured property.

**d.** We shall pay reasonable costs associated with the "neutral evaluation". However, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the "neutral evaluation", that party must bear such costs.

**e.** Upon receipt of a request for "neutral evaluation", the department shall provide the parties a list of certified "neutral evaluators". The department shall allow the parties to submit requests to disqualify evaluators on the list for cause.

**(1)** The department shall disqualify "neutral evaluators" for cause based only on any of the following grounds:

**(a)** A familial relationship exists between the "neutral evaluator" and either party or a representative of either party within the third degree.

eFiled Lee County Clerk of Courts Page 44

**(b)** The proposed "neutral evaluator" has, in a professional capacity, previously represented either party or a representative of either party, in the same or a substantially related matter.

**(c)** The proposed "neutral evaluator" has, in a professional capacity, represented another person in the same or a substantially related matter and that person's interests are materially adverse to the interests of the parties. The term substantially related matter means participation by the "neutral evaluator" on the same claim, property, or adjacent property.

**(d)** The proposed "neutral evaluator" has, within the preceding 5 years, worked as an employer or employee of any party to the case.

**(2)** The parties shall appoint a "neutral evaluator" from the department list and promptly inform the department. If the parties cannot agree to a "neutral evaluator" within 14 business days, the department shall appoint a "neutral evaluator" from the list of certified "neutral evaluators." The department shall allow each party to disqualify two "neutral evaluators" without cause. Upon selection or appointment, the department shall promptly refer the request to the "neutral evaluator."

**(3)** Within 14 business days after the referral, the "neutral evaluator" shall notify you and us of the date, time, and place of the "neutral evaluation" conference. The conference may be held by telephone, if feasible and desirable. The "neutral evaluator" shall make reasonable efforts to hold the conference within 90 days after the receipt of the request by the department. Failure of the "neutral evaluator" to hold the conference within 90 days does not invalidate either party's right to "neutral evaluation" or to a "neutral evaluation" conference held outside this timeframe.

**f.** At the conclusion of the "neutral evaluation", the "neutral evaluator" shall prepare a report describing all matters that are the subject of the "neutral evaluation", including whether, in his or her opinion, the "sinkhole loss" has been verified or eliminated within a reasonable degree of professional probability and, if verified, whether the "sinkhole activity" caused "structural damage" to the covered building, and if so, the need for and estimated costs of stabilizing the land and any covered buildings and other appropriate remediation or necessary building structural repairs due to the "sinkhole loss." The evaluator's report shall be sent to all parties and to the department, within 14 days after completing the "neutral evaluation" conference.

**g.** The recommendation of the "neutral evaluator" is not binding on any party, and the parties retain access to the court. The "neutral evaluator's" written recommendation, oral testimony, and full report shall be admitted in any action, litigation, or proceeding relating to the claim or to the cause of action giving rise to the claim.

**h.** If the "neutral evaluator" verifies the existence of a sinkhole that caused "structural damage" and recommends the need for and estimates costs of stabilizing the land and any covered buildings and other appropriate remediation or building repairs, which exceed the amount that we offered to pay you, we are liable to you for up to $2,500 in attorney's fees for the attorney's participation in the "neutral evaluation" process. For purposes of this subsection, the term "offer to pay" means a written offer signed by us or our legal representative and delivered to you within 10 days after we receive notice that a request for "neutral evaluation" has been made.

    **i.**   If we timely agree in writing to comply and timely comply with the recommendation of the "neutral evaluator", but you decline to resolve the matter in accordance with the recommendation of the "neutral evaluator" pursuant to this section:

      **(1)**  We are not liable for extracontractual damages related to a claim for a "sinkhole loss" but only as related to the issues determined by the "neutral evaluation" process. This section does not affect or impair claims for extracontractual damages unrelated to the issues determined by the "neutral evaluation" process contained in this section; and

      **(2)**  Our actions are not a confession of judgment or admission of liability, and we are not liable for attorney's fees under Florida statute 627.428 or other provisions of the insurance code unless the policyholder obtains a judgment that is more favorable than the recommendation of the "neutral evaluator."

    **j.**  If we agree to comply with the "neutral evaluator's" report, payments shall be made in accordance with the terms and conditions of the applicable insurance policy pursuant to Florida statute 627.707(5).

**8. Suit Against Us.** The following language is added with respect to sinkhole coverage:

**8. Suit Against Us.** No action can be brought unless the policy provisions have been complied with. Filing a request for "neutral evaluation" tolls the applicable time requirements for filing suit for a period of 60 days following the conclusion of the "neutral evaluation" process or 5 years, whichever is later.

## SECTION I AND 2 - CONDITIONS

### 6. Nonrenewal

With respect to a loss to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, caused by a "sinkhole loss", Item **6.c.** is added:

    **6.c.**  We will not nonrenew any policy on the basis of filing of claims for sinkhole loss if the total of such payments does not equal or exceed the policy limits of coverage for the policy in effect on the date of loss, for property damage to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, or if the policyholder repaired the structure in accordance with Liberty Mutual's engineer's recommendations upon which any payment or policy proceeds were based. If we pay such limits, we may nonrenew the policy.

All other provisions of your policy apply.

eFiled Lee County Clerk of Courts Page 46



# AMENDATORY MOLD, FUNGUS, WET ROT, DRY ROT, BACTERIA, OR VIRUS ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**DEFINITIONS**

The following definition is added to the DEFINITIONS section:

9. **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins (meaning a toxin produced by a fungus), other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or viruses.

**SECTION I – PROPERTY COVERAGES**

**Additional Coverages**

The following Additional Coverage is added:

12. **Remediation of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" Resulting Directly From Any Covered Loss**

We will pay, up to the Basic Policy Limits or Option shown in the Declarations, for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss.

**"Remediation"** means the reasonable and necessary treatment, containment, decontamination, removal or disposal of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** as required to complete the repair or replacement of property, covered under Section I of the policy, that is damaged by any covered peril insured against, and also consists of the following:

1. The reasonable costs or expense to remove, repair, restore, and replace that property including the costs to tear out and replace any part of the building as needed to gain access to the **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**; and

2. the reasonable costs or expense for the testing or investigation necessary to detect, evaluate or measure **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**; and

3. any loss of fair rental value, or reasonable increase in additional living expenses, that is necessary to maintain your normal standard of living, if **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss makes your residence premises uninhabitable.

We will pay no more than the Basic Policy Limits or Option shown in the Declarations for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss during the policy period, regardless of the number of locations under the policy to which this endorsement is attached, the number of persons whose property is damaged, the number of "insureds," or the number of losses or claims made.

If there is a covered loss or damage to covered property, not caused, in whole or in part, by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus,"** loss payment will not be limited by the terms of this Additional Coverage, except to the extent that **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** causes an increase in the loss.  Any such increase in the loss will be subject to the terms of this Additional Coverage.

FMHO 3468 08 13

Page 1 of 3



This limitation does not apply to **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** ensuing from a covered fire or lightning loss.

This Additional Coverage does not increase the limits of liability under Section I of the policy as shown in the Declarations.

**SECTION I – EXCLUSIONS**

Exclusion **1.i.** is added:

    **i.**    Except as provided by **Additional Coverage 12.**, loss consisting of or caused by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** is excluded, even if resulting from a peril insured against under Section I. We do not cover **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus,"** even if resulting from a peril insured against under Section I, except as provided by **Additional Coverage 12.**

This exclusion does not apply to **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** ensuing from a covered fire or lightning loss.

**SECTION II (LIABILITY COVERAGES) – CONDITIONS**

Condition **1. Limit of Liability** is deleted and replaced by the following:

    **1.**    **Limit of Liability.** Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage Limit shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the alleged or threatened inhalation of, ingestion of contact with exposure to, existence of, or presence of any **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** will not be more than the Coverage **E** Aggregate Sublimit of Liability for **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** shown in the Declarations. This is the most we will pay regardless of the:

    a.    Number of locations insured under the policy to which this endorsement is attached;

    b.    Number of persons injured;

    c.    Number of persons whose property is damaged;

    d.    Number of "insureds"; or

    e.    Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability shown in the Declarations. This sublimit applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** described in **1. Limit of Liability** of this endorsement, Condition **2. Severability of Insurance** is deleted and replaced by the following:

    **2.**    **Severability of Insurance.** This insurance applies separately to each "insured" except with respect to the Coverage **E** Aggregate Sublimit of Liability described in this endorsement under Section **II** Conditions **1. Limit of Liability.** This condition will not increase the limit of liability for this coverage.

**This endorsement takes precedence over all other endorsements attached to your policy.**



**BASIC COVERAGE LIMITS AND OPTIONAL INCREASED LIMITS**

| | | | |
|---|---|---|---|
| **Basic Policy Limit:** | **SECTION I** | **Each Covered Loss** | **$10,000** |
| | | **Policy Aggregate** | **$20,000** |
| | **SECTION II** | **Aggregate Sublimit** | **$50,000** |
| | | | |
| **Option A – for a premium charge:** | **SECTION I** | **Each Covered Loss** | **$25,000** |
| | | **Policy Aggregate** | **$50,000** |
| | **SECTION II** | **Aggregate Sublimit** | **$50,000** |
| **Option B – for a premium charge:** | **SECTION I** | **Each Covered Loss** | **$50,000** |
| | | **Policy Aggregate** | **$50,000** |
| | **SECTION II** | **Aggregate Sublimit** | **$50,000** |

# HURRICANE COVERAGE ENDORSEMENT

No coverage is provided for accidental direct physical loss to the property described in the policy caused by a **hurricane** other than that which is provided by this endorsement.

The provisions of this endorsement apply only in respect to loss caused by **hurricane**.

All other policy provisions apply.

**DEFINITIONS**

When used in this endorsement:

**hurricane** means a storm system that has been declared to be a **hurricane** by the National Hurricane Center of the National Weather Service. The duration of the **hurricane** includes the time period in Florida:

a. beginning at the time a **hurricane** watch or **hurricane** warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

b. continuing for the time period during which the **hurricane** conditions exist anywhere in Florida; and

c. ending 72 hours following the termination of the last **hurricane** watch or **hurricane** warning for any part of Florida by the National Hurricane Center of the National Weather Service.

**SECTION I - PROPERTY COVERAGE**

**COVERAGE A - DWELLING** is deleted and replaced by the following:

1. We cover only the dwelling used principally as a private residence on the residence premises shown in the Declarations including its supporting foundation, floor slab and footings.

    The dwelling does not include:

    a. structures attached to the dwelling (except attached garages that share a common wall with the dwelling);

    b. outbuildings and appurtenant structures;

    c. swimming pools, hot tubs, spas and associated plumbing, filtering and circulating systems;

    d. fences and walls not necessary for the structural integrity of the dwelling;

    e. awnings or patio covers;

    f. trees, plants, shrubs, lawn or other landscaping, whether damaged by the **hurricane** or the process of repairing damage; or

    g. lawn sprinkling systems, fountains, and other plumbing, sewage, or utility systems outside the dwelling whether or not connected to or part of the internal dwelling systems. We do provide coverage for systems required for legal habitation of the covered dwelling.

2. We cover wall-to-wall carpeting attached to the dwelling on the **residence premises.** This does not increase the Coverage A limit of liability.

3. We cover screening and screened enclosures attached to the dwelling on the **residence premises,** other than screening that covers the windows of the dwelling. We will pay the actual cash value at the time of loss, up to $15,000. This does not increase the Coverage A limit of liability.

4. **Property Not Covered.** We do not cover:

    a. land, including the land necessary to support any Coverage A property;

    b. any cost required to replace, rebuild, stabilize, or otherwise restore the land; or

    c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

**COVERAGE B - OTHER STRUCTURES** is replaced by the following:

Coverage has been eliminated unless you have purchased coverage separately.

**COVERAGE C - PERSONAL PROPERTY** is replaced by the following:

1. We cover personal property owned or used by an **insured** while it is contained within a fully enclosed building on the **residence premises.** Personal property does not include structures whether or not attached to or otherwise forming a part of the realty.

   **Special Limits of Liability.** These limits do not increase the Coverage C limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins and medals including any of these that are part of a collection, and bank notes;

   b. $1,000 on property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises;**

   c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, stamps, and tickets;

   d. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home.

   e. $5,000 on Fine Arts;

   f. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

   g. $1,000 on trailers not used with watercraft;

2. Our payment will not exceed an amount equal to 50% of the Coverage A limit applicable at the time of loss.

3. **Property Not Covered.** We do not cover:

   a. articles separately described and specifically insured in any other insurance;

   b. animals, birds or fish;

   c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

      (1) used solely to service the **residence premises**; or

      (2) designed for assisting the handicapped;

   d. devices or instruments for recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

   e. aircraft and parts;

   f. property regularly rented or held for rental to others by an **insured.** This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

   g. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

   h. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

   i. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

   j farm personal property.

FMHO 2043                                          2                                          03 01
                                                                                                  PF

**COVERAGE D - LOSS OF USE** is deleted and replaced by the following:

1. **Additional Living Expense.** When a **hurricane** causes the covered dwelling to become uninhabitable, we will cover the necessary increase in incurred living expenses for up to 12 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the covered dwelling; (b) the time required for your household to settle elsewhere; (c) 12 months.

2. **Fair Rental Value.** When a hurricane makes that part of the "residence premises" rented to others or held for rental by you uninhabitable, we cover the:

   Fair Rental Value, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. **Prohibited Use.** If a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a **hurricane,** we will cover any reasonable resulting Additional Living Expense. Coverage is for a period not exceeding two weeks while use is prohibited.

   We do not cover loss or expense due to cancellation of a lease or agreement.

Our payment will not exceed an amount equal to 10% of the Coverage A limit applicable at the time of loss.

This coverage is not reduced by expiration of this policy.

**SECTION I - PERILS INSURED AGAINST** is deleted and replaced by the following:

**COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B (If purchased separately) only if that loss is a physical loss to property, except property not covered in **SECTION I - PROPERTY COVERAGE, 4. Property Not Covered,** caused by the peril of **hurricane.**

**COVERAGE C - PERSONAL PROPERTY**

We insure against risk of direct loss to property described in Coverage C, except property not covered in **SECTION I - PERSONAL PROPERTY, 2. Property Not Covered,** caused by the peril of **hurricane.**

**DEDUCTIBLE**

The deductible for loss caused by each **hurricane** is the amount determined by applying the Hurricane Deductible percentage (%) shown in the **Declarations** to the **COVERAGE A - DWELLING** limit applicable at the time of loss.

In the event of a **hurricane** loss, this deductible will apply in place of any other deductible stated in the policy. In no event will this deductible be less than Section I deductible amount shown in the **Declarations**.

**SECTION I - CONDITIONS. Loss Settlement** is deleted and replaced by the following:

3. **Loss Settlement**. Covered property losses are settled as follows:

   a. Personal Property:

   (1) We will pay the actual cash value at the time of loss for personal property, but not more than:

   (a) The full cost of repair or replacement; or

   (b) Any special limit of liability described in the policy; or

   (c) Coverage C limit of liability stated.

b. Buildings under Coverage A at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but no more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises.

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers, or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring, and drains.

(4) We will pay no more than the actual cash value of the damage until the actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after the loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

(6) Loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis, according to the provisions of this Condition 3. Loss Settlement.

(7) Our payment will be based on any ordinance or law in effect at the time of the loss regulating the construction or repair of the damaged portion of the dwelling.

If the undamaged portion of the dwelling requires demolition due to the enforcement of any ordinance or law in effect at the time of the loss, we will pay the actual cash value of the:

(a) cost of demolition, and;

(b) cost of debris removal of the undamaged portion of the dwelling.

This limit of insurance provided for building ordinance or law coverage is an amount equal to 25% of the **COVERAGE A- DWELLING** limit applicable at the time of loss.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**
## CALENDAR YEAR HURRICANE DEDUCTIBLE (PERCENTAGE) - FLORIDA
### ALL FORMS EXCEPT HO 00 04
### SCHEDULE*

---

**Calendar Year Hurricane Deductible Amount _____% of the Coverage A - Dwelling Limit of Liability**

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**A.  Loss by Windstorm During a Hurricane**

With respect to paragraphs **C.** and **D.**, coverage for windstorm loss caused by a hurricane which occurs anywhere in the state of Florida, includes loss to:

1. The inside of a building; or

2. The property contained in a building caused by:

    a. Rain;

    b. Snow;

    c. Sleet;

    d. Hail;

    e. Sand; or

    f. Dust;

if the direct force of the windstorm damages the building, causing an opening through which rain, snow, sleet, hail, sand or dust enters and causes damage.

**B.  Hurricane Described**

1. A hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.

2. A hurricane occurrence:

    a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service; and

    b. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**C.  Calendar Year Hurricane Deductible Described**

A hurricane deductible issued by us or an insurer in the same insurer group:

1. Can be exhausted only once during each calendar year; and

2. Applies to loss on Covered Property caused by one or more hurricanes during each calendar year.

The dollar amount of the calendar year hurricane deductible is determined by multiplying the Coverage **A** limit of liability shown in the Declarations by the percentage amount shown in the Schedule above.

**D.  Application of Calendar Year Hurricane Deductible**

1. In the event of the first windstorm loss caused by a single hurricane occurrence during a calendar year, we will pay only that part of the total of all loss payable under Section I - Property Coverages that exceeds the calendar year hurricane deductible stated in the Schedule.

FMHO 1158 R1                                    1                                    PF

2. With respect to a windstorm loss caused by the second, and each subsequent hurricane occurrence during the same calendar year, we will pay only that part of the total of all loss or damage payable under Section I - Property Coverages that exceeds the greater of:

   a. The remaining dollar amount of the calendar year hurricane deductible; or

   b. The deductible that applies to fire that is in effect at the time of the loss.

   The remaining dollar amount of the calendar year hurricane deductible is determined by subtracting all previous windstorm losses caused by hurricanes during the calendar year from the calendar year hurricane deductible.

3. If:

   a. Covered property is insured under more than one policy issued by us or another insurer in the same insurer group; and

   b. Different hurricane deductibles apply to the same property under such policies;

   Then the hurricane deductible applicable under all such policies used to determine the total of all loss payable under Section I - Property Coverages shall be the highest amount stated in any one of the policies.

4. When a renewal policy is issued by us or an insurer in the same insurer group, or we issue a policy that replaces one issued by us or an insurer in the same insurer group, and the renewal or replacement policy takes effect on a date other than January 1st of a calendar year, the following provisions apply:

   a. If the renewal or replacement policy provides a lower hurricane deductible than the prior policy, and you incurred loss from a hurricane under the prior policy in that same calendar year, the lower hurricane deductible will not take effect until January 1st of the following calendar year.

   b. If the renewal or replacement policy provides a lower hurricane deductible than the prior policy, and you have not incurred a hurricane loss in the same calendar year, the lower hurricane deductible will take effect on the effective date of the renewal or replacement policy.

   c. If the renewal or replacement policy provides a higher hurricane deductible than the prior policy, the higher hurricane deductible:

      (1) Will take effect on the effective date of the renewal or replacement policy; and

      (2) Shall be used to calculate the remaining dollar amount of the hurricane deductible described in Paragraph **2.**

5. You must:

   a. Maintain receipts or other records of hurricane losses below the deductible amount;

   So that we may apply the amount of losses below the deductible amount to subsequent claims for windstorm loss caused by hurricanes that occur during the calendar year.

**E. Loss By Windstorm That is Not A Declared Hurricane**

Refer to the policy declarations for the deductible that applies to windstorm loss if the circumstances of the loss described above do not apply.

All other provisions of this policy apply.



## MASTER THE FIRST LIBERTY INSURANCE CORPORATION ENDORSEMENT

The policy is amended by the following:

1. It is agreed that wherever the words "Liberty Mutual Fire Insurance Company" appear in this policy the words "The First Liberty Insurance Corporation" shall apply in place thereof.

2. It is further agreed that any statement that the policy is classified in a particular dividend class is deleted.

3. It is further agreed that all references to the named insured's membership in the company and entitlement to vote at meetings of the company, and to the place, date and time of the company's annual meeting are deleted.

4. It is further agreed that the Mutual Policy Conditions provision is deleted.

All other terms and conditions of the policy remain unchanged.

2320 (10/89)



## LEAD POISONING EXCLUSION ENDORSEMENT

The following provisions are added to and made part of your Homeowners Policy:

Section I - Property Coverages do not apply to any costs or expenses incurred or loss arising out of:

1. the removal, testing for, monitoring, clean-up, abatement, treatment, or neutralization of lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead, or;

2. any governmental direction or other request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

1. arising out of lead paint, plaster or putty containing lead; soil or earth containing lead or any other material or substance containing lead, or;

2. any costs or expenses incurred or loss arising out of any claim, governmental direction, or request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

This exclusion applies to any obligation to share damages, costs or expenses with someone else or to repay someone else who must pay damages, costs or expenses.

FMHO 976 (Ed. 5-92)                    **LIBERTY MUTUAL GROUP**                    Page 1 of 1

**SEEPAGE EXCLUSION ENDORSEMENT**

**This endorsement changes your policy.  Please read it carefully.**

**SECTION I - PERILS INSURED AGAINST**

**Coverage A - Dwelling and Coverage B - Other Structures**

Paragraph **2.e. (9)** is added:

**(9)  Seepage**, meaning a gradual, continuous or repeated seepage or leakage, of water, steam or fuel over a period of 14 days or more, resulting in damage to the structure, whether hidden or not.

**This endorsement takes precedence over all other endorsements attached to your policy.**

**FMHO 3314 10 11**

Page 1 of 1
**PF**

# SMALL BOAT AND MOTOR FORM

### Forming Part of Policy Number ################

**Issued to:**

We insure small boats, motors, boat trailers and miscellaneous items as described, not to exceed the amount shown for each item.

**1.  Schedule of Insured Property**

| | DESCRIPTION | YEAR BUILT | MODEL, SERIAL NUMBERS AND MANUFACTURER | DATE PURCHASED | COST TO INSURED | LIMIT OF LIABILITY |
|---|---|---|---|---|---|---|
| A | **BOAT** including spars, sails, and equipment permanently attached | | | | | |
| B | **MOTOR** include horse power beside year built | | | | | |
| C | **BOAT TRAILER** specifically designed for transportation of boats | | | | | |
| D | **MISCELLANEOUS ITEMS:** Portable boat accessories consisting principally of anchors, oars, tarpaulins, lights, cushions, life preservers, fire extinguishers, fuel containers, or horns while such property is attached to or contained in or on the insured's boat. | | | | | |

| | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|
| TOTAL LIMIT OF LIABILITY FOR A THRU D, AND PREMIUM | $ See Dec | $ See Dec |
| EMERGENCY SERVICE COVERAGE ($50 deductible applies) | $ | $ See Dec |
| TOTAL PREMIUM | | $ See Dec |

**2.  Deductible**  (Applies to Boat, Motor, Boat Trailer and Miscellaneous Items)

Each claim for loss or damage to insured property will be reduced by the deductible shown.
We will treat two or more claims resulting from the same accident or occurrence as one claim.

**LOSS PAYEE:** Loss is payable to the Named Insured and:
Name:

Address:

FMHO 696 Ed. 9/97                                                                                              PF

3. **Newly Acquired Property**

This endorsement covers any boat, motor, boat trailer or miscellaneous items which you acquire during the policy period. You must notify us within 30 days after you become the owner. You agree to pay all additional premium required for such a boat, motor, boat trailer or miscellaneous items.

4. **Territorial Limits**

The coverage under this endorsement shall only be effective while the insured property is afloat or on shore within the limits of the Continental United States, Hawaii, and Canada unless otherwise provided.

5. **Special Conditions**

With respect to the items described in 1 (d), the theft coverage under this endorsement shall apply only if the theft of such items occurs simultaneously with the theft of the boat, motor, or boat trailer.

6. **Perils Insured Against:** We insure for all risks of physical loss to the property described except:

(a) Loss or damage to any insured property while it is being used to carry persons or property for a fee.

(b) Loss or damage to any insured property while it is being rented to others for a fee.

(c) Loss or damage to any insured property while it is being used in any unlawful trade or transportation.

(d) Loss or damage to any insured property while it is being used in any official powerboat race or speed test.

(e) Loss or damage due to wear and tear, gradual deterioration, weathering, insects, mold, vermin, marine life damage, freezing, corrosion, or rust.

(f) Loss or damage to any insured property caused by hidden defect, mechanical breakdown, or faulty manufacture.

(g) Loss or damage caused by repair, service or maintenance operation unless fire results. Such loss or damage shall be limited to the amount of loss caused by the fire.

(h) Loss or damage intentionally caused by any insured.

7. **Emergency Service Coverage**

Insuring Agreement

If a premium is shown on the front of this form for this coverage:

We will pay up to the limit shown on the front of this form for this coverage, for towing to the nearest port if your covered boat becomes disabled while under way. This includes labor costs for services which must be performed at the place of disablement. This coverage applies only to services provided by a commercial boat service facility. A $50 deductible applies to each Emergency Service claim.

8. **Loss Settlement**

The Loss Settlement provision of the policy applies.

All other terms and conditions of the policy remain unchanged and still apply.

LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Dexter R. Legg*
SECRETARY

*David M. Fray*
PRESIDENT

Countersigned by _____
                        Authorized Representative







The First Liberty Insurance Corporation
P.O. Box 5014
Scranton, PA 18505-5014

📞 CONTACT US

Eric.Stjohn@LibertyMutual.com

Direct:    4066026231
Fax:       888-268-8840

**The First Liberty Insurance Corporation**
P.O. Box 5014
Scranton, PA 18505-5014
800-225-2467

LibertyMutual.com

GARY WINDSOR
7281 HENDRY CREEK DR
FORT MYERS, FL 33908-4213

March 06, 2023

Claim Number:          051085644-01
Date of Incident:      09/28/2022
Insured:               GARY WINDSOR, KATHLEEN J WINDSOR
Policy Number:         H36-258-788676-40
Loss Location:         7281 HENDRY CREEK DR, FORT MYERS, FL 33908-4213
Underwriting Company:  The First Liberty Insurance Corporation

Dear Gary Windsor,

We're writing to inform you that we completed our review of your claim based on information provided by you or on your behalf. The following is a summary of our findings and position on coverage for this claim.

The insurance policy provides coverage subject to policy terms and conditions. Based on our review of the policy, there is partial coverage available for your loss as outlined below.

**Our Coverage Position**

EFI Global Engineering has completed the Roof Damage Assessment and their report shows that the additional roof damages being claimed are not the direct result of wind damage, therefore, we are unable to assist you with the additional repairs to the roof.

Also, as previously discussed, the Hurricane Coverage Endorsement does not provide coverage for separate structures or docks.

Your covered damages are below your hurricane deductible of $7,890.77, therefore, no payments will be issued

1PDEN First Party Partial Coverage Denial 051085644-01                                      Page 1 of 3



at this time.

After repairs are complete, if you've made any improvements to your home, or replaced the roofing shingles on your home, you'll need to update your policy accordingly. For assistance, please contact your Sales Representative or call **800-225-7014**.

**Payment to you:**

| | |
|---|---|
| Dwelling | $ 9,032.59 |
| Deductible | ($ 7,890.77) |
| Recoverable Depreciation | ($ 1,141.82) |
| Payment to you | $  0.00 |

We list below the grounds under which all aspects of the claim are not covered under the policy, so you may be aware of the factors for the partial denial of coverage.  It is our intent to incorporate by reference all of the terms of the policy through this partial denial of coverage letter. Based on the information available to date, the grounds for the partial denial of coverage under the policy, or under applicable law, with respect to the claim, include, but are not limited to, the following:

**HURRICANE COVERAGE ENDORSEMENT FMHO 2043 PF 1 03 01**

No coverage is provided for accidental direct physical loss to the property described in the policy caused by a **hurricane** other than that which is provided by this endorsement.
…
**SECTION I - PROPERTY COVERAGE**
**COVERAGE A - DWELLING** is deleted and replaced by the following:
    1. We cover only the dwelling used principally as a private residence on the residence premises shown in the Declarations including its supporting foundation, floor slab and footings.
       The dwelling does not include:
        a. structures attached to the dwelling (except attached garages that share a common wall with the dwelling);
        b. outbuildings and appurtenant structures;
        c. swimming pools, hot tubs, spas and associated plumbing, filtering and circulating systems;
        d. fences and walls not necessary for the structural integrity of the dwelling;
        e. awnings or patio covers;
        f. trees, plants, shrubs, lawn or other landscaping, whether damaged by the hurricane or the process of repairing damage; or
        g. lawn sprinkling systems, fountains, and other plumbing, sewage, or utility systems outside the dwelling whether or not connected to or part of the internal dwelling systems. We do provide coverage for systems required for legal habitation of the covered dwelling.
    2. We cover wall-to-wall carpeting attached to the dwelling on the residence premises. This does not increase the Coverage A limit of liability.
    3. We cover screening and screened enclosures attached to the dwelling on the residence premises, other than screening that covers the windows of the dwelling. We will pay the actual cash value at the time of loss, up to $15,000. This does not increase the Coverage A limit of liability.
    4. Property Not Covered. We do not cover:
        a. land, including the land necessary to support any Coverage A property;
        b. any cost required to replace, rebuild, stabilize, or otherwise restore the land; or
        c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

1PDEN First Party Partial Coverage Denial 051085644-01                                                    Page 2 of 3



**COVERAGE B - OTHER STRUCTURES** is replaced by the following:

Coverage has been eliminated unless you have purchased coverage separately.

…

**SECTION I - PERILS INSURED AGAINST**

**COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

…

**2**. Caused by:

…

e.   Any of the following:

(1) Wear and tear, marring, deterioration;

…

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

…

**We're Here To Help**

Based on the policy language above, there is no coverage for the additional damage to the roof and no coverage for separate structures or the dock for damage caused by hurricane.

Sincerely,

ERIC ST JOHN
Claims Department

## Cloud 9 Claims LLC

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

**EXHIBIT**

**C**

Client:       Gary and Kathleen Windsor
Property:    7281 Hendry Creek Dr
              Fort Myers, FL 33908

Operator:    SHADJUST

Estimator:   Steven H                                   Business:    (239) 777-0113

Type of Estimate:    Wind Damage
Date Entered:        11/27/2022              Date Assigned:
Date Est. Completed: 12/8/2022              Date Job Completed:

Price List:          FLFM8X_NOV22
Labor Efficiency:    Restoration/Service/Remodel
Estimate:            WINDSOR_GARY

Please be advised, insurance proceeds are paid upon the premise that if a cost would be incurred, then a cost would be owed. More specifically, items such as permits, re-nailing of the deck, OSHA safety standards, or any similar items do not qualify as "Cost Incurred" items. These are items that are requirements. They are not "upgrades" or "Building Law or Ordinance." The insured is not building a new structure, they are putting back what was there, what has already been permitted at one time, nailed at one time, and installed at one time.

We look forward to working with you.

**Cloud 9 Claims LLC**

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

**WINDSOR_GARY**

**Main Level**

Main Level

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1. Dumpster load - Approx. 40 yards, 7-8 tons of debris | 1.00 EA | 1,211.00 | 0.00 | 363.30 | 1,574.30 | <0.00> | 1,574.30 |
| 2. Fall protection harness and lanyard - per week | 40.00 WK | 22.00 | 0.00 | 264.00 | 1,144.00 | (0.00) | 1,144.00 |
| Fall protection harness and lanyard. This includes roofers, HVAC technicians, electricians ect. that will be needed to complete the job. | | | | | | | |
| 3. On-Site Evaluation and/or Supervisor/Admin - per hour | 40.00 HR | 67.78 | 70.49 | 813.36 | 3,595.05 | (0.00) | 3,595.05 |
| Labor is to analyze, design and install a fall protection system following OSHA guidelines from the "Fall Protection for the Construction Industry, Code of Federal Regulations 1926, Subpart M." | | | | | | | |
| Labor to install and remove fall protection life lines and anchors | | | | | | | |
| 4. General clean - up | 16.00 HR | 50.23 | 0.01 | 241.10 | 1,044.79 | (0.00) | 1,044.79 |
| General site cleanup during construction. | | | | | | | |
| 5. Temporary toilet (per month) | 1.00 MO | 119.00 | 0.00 | 35.70 | 154.70 | (0.00) | 154.70 |
| 6. R&R Sheathing - plywood - 1/2" CDX | 192.00 SF | 3.39 | 19.08 | 200.98 | 870.94 | (0.00) | 870.94 |
| Plywood is for placing under the dumpster to protect the ground surface from delivery and pick of dumpster weight with debris. | | | | | | | |
| 7. Window Treatment (Bid Item Coastal Canvas & Awning Outdoor window awnings)* | 1.00 EA | 4,614.00 | 0.00 | 0.00 | 4,614.00 | (0.00) | 4,614.00 |
| 8. Swimming Pools & Spas (Bid Item Stilwell soalr Pool solar heat panels)* | 1.00 EA | 4,925.00 | 0.00 | 1,477.50 | 6,402.50 | (0.00) | 6,402.50 |
| 9. Tree replacement - (Bid Item Bismarck Palm)* | 1.00 EA | 1,200.00 | 0.00 | 360.00 | 1,560.00 | (0.00) | 1,560.00 |
| https://www.qualitypalms.com/bismarck-palm-10-of-clear-trunk.html | | | | | | | |
| 10. Landscaping - Labor Minimum | 8.00 EA | 74.22 | 0.00 | 178.12 | 771.88 | (0.00) | 771.88 |
| Deliver and install Bismarck palm | | | | | | | |
| 11. Tree - shade or flowering - 3 1/2" caliper | 1.00 EA | 571.24 | 23.94 | 178.56 | 773.74 | (0.00) | 773.74 |
| Replace olive tree | | | | | | | |
| 12. DockSavers Dock Repair Bid item* | 1.00 EA | 11,000.00 | 770.00 | 3,531.00 | 15,301.00 | (0.00) | 15,301.00 |
| 13. General clean - up (Homeowner post storm cleanup)* | 60.00 HR | 50.23 | 0.00 | 0.00 | 3,013.80 | (0.00) | 3,013.80 |
| Insured used their own tools, equipment, and supplies for post storm cleanup. | | | | | | | |
| **Total: Main Level** | | | **883.52** | **7,643.62** | **40,820.70** | **0.00** | **40,820.70** |

eFiled Lee County Clerk of Courts Page 65

**Cloud 9 Claims LLC**

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560



### Roof1

| | |
|---|---|
| 4986.92 Surface Area | 49.87 Number of Squares |
| 381.85 Total Perimeter Length | 100.48 Total Ridge Length |
| 299.44 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 14.  Remove Tile roofing - Concrete - "S" or flat tile | 49.87 SQ | 266.04 | 0.00 | 3,980.22 | 17,247.63 | (0.00) | 17,247.63 |
| 15.  Tile roofing - Concrete - "S" or flat tile | 57.35 SQ | 830.87 | 784.59 | 14,530.50 | 62,965.48 | (0.00) | 62,965.48 |
| 16.  R&R Hip / Ridge / Rake cap - tile roofing | 399.93 LF | 20.83 | 197.37 | 2,558.38 | 11,086.29 | (0.00) | 11,086.29 |
| 17.  R&R Sheathing - plywood - 1/2" CDX | 4,986.92 SF | 4.53 | 495.70 | 6,925.94 | 30,012.39 | (0.00) | 30,012.39 |
| 18.  Sheathing - additional cost for H-clips | 4,986.92 SF | 0.16 | 6.98 | 241.48 | 1,046.37 | (0.00) | 1,046.37 |
| 19.  Tear off modified bitumen roofing (no haul off) | 49.87 SQ | 55.54 | 0.00 | 830.94 | 3,600.72 | (0.00) | 3,600.72 |
| 20.  Modified bitumen roof | 49.87 SQ | 533.70 | 463.84 | 8,123.84 | 35,203.30 | (0.00) | 35,203.30 |
| Roofing Accessories | | | | | | | |
| 21.  R&R Chimney flashing - large (32" x 60") | 1.00 EA | 809.39 | 9.00 | 245.52 | 1,063.91 | (0.00) | 1,063.91 |
| 22.  Bird stop - Eave closure strip for tile roofing - metal | 381.85 LF | 4.72 | 42.23 | 553.36 | 2,397.92 | (0.00) | 2,397.92 |
| 23.  Ice & water shield* | 381.85 SF | 2.26 | 12.03 | 262.50 | 1,137.51 | (0.00) | 1,137.51 |
| 24.  Re-nailing of roof sheathing - complete re-nail | 4,986.92 SF | 0.37 | 3.49 | 554.58 | 2,403.23 | (0.00) | 2,403.23 |
| 25.  R&R Valley metal | 161.19 LF | 8.58 | 22.91 | 421.78 | 1,827.70 | (0.00) | 1,827.70 |
| 26.  Hip & ridge nailer board for tile roofing - channel metal | 799.85 LF | 3.77 | 90.14 | 931.66 | 4,037.23 | (0.00) | 4,037.23 |
| 27.  R&R Gutter / downspout - aluminum - 6" | 381.85 LF | 12.32 | 218.91 | 1,477.00 | 6,400.30 | (0.00) | 6,400.30 |
| 28.  R&R Drip edge/gutter apron | 381.85 LF | 4.38 | 35.82 | 512.50 | 2,220.83 | (0.00) | 2,220.83 |
| 29.  R&R Flashing - pipe jack - lead | 2.00 EA | 108.13 | 6.52 | 66.84 | 289.62 | (0.00) | 289.62 |
| 30.  Prime & paint roof vent | 2.00 EA | 40.47 | 1.09 | 24.60 | 106.63 | (0.00) | 106.63 |
| 31.  Apply mastic around vent pipes to repair leakage | 4.00 EA | 41.51 | 0.24 | 49.90 | 216.18 | (0.00) | 216.18 |
| 32.  Prime & paint roof jack | 2.00 EA | 40.47 | 1.09 | 24.60 | 106.63 | (0.00) | 106.63 |
| 33.  R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 139.66 | 6.25 | 85.68 | 371.25 | (0.00) | 371.25 |
| 34.  Step flashing | 22.00 LF | 14.48 | 2.49 | 96.30 | 417.35 | (0.00) | 417.35 |
| 35.  Stucco color coat (Redash) - coarse texture | 40.00 SF | 4.53 | 1.60 | 54.84 | 237.64 | (0.00) | 237.64 |
| 36.  Telehandler/forklift and operator | 8.00 HR | 125.50 | 0.00 | 301.20 | 1,305.20 | (0.00) | 1,305.20 |
| **Totals:  Roof1** | | | **2,402.29** | **42,854.16** | **185,701.31** | **0.00** | **185,701.31** |
| **Total:  Main Level** | | | **3,285.81** | **50,497.78** | **226,522.01** | **0.00** | **226,522.01** |

## Cloud 9 Claims LLC

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

### Interior

**Interior**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 37. Cleaning (Bid Item) | 1,071.29 EA | 1.50 | 0.00 | 482.08 | 2,089.02 | (0.00) | 2,089.02 |

The insured will need to move contents and reset exactly the way they were before moving. Then entire residence must be cleaned. This includes all the cabinets, trim, nooks and crannies that drywall dust, and construction workers terrorize. If this is not suitable, we can break it out in great detail, and charge for every single item, separately. I believe the psf method to be the best available in these situations, and most carriers have agreed in the past.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total: Interior** | | | **0.00** | **482.08** | **2,089.02** | **0.00** | **2,089.02** |



**Family Room**                                                                          **Height: 11' 10"**

1067.77 SF Walls                      593.43 SF Ceiling
1661.20 SF Walls & Ceiling           593.43 SF Floor
65.94 SY Flooring                    90.23 LF Floor Perimeter
90.23 LF Ceil. Perimeter

**Missing Wall**              **17' 9 3/16" X 11' 10"**              **Opens into KITCHEN**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Ceiling** | | | | | | | |
| 38. Drywall tape joint / repair - per LF | 18.00 LF | 10.80 | 0.45 | 58.46 | 253.31 | (0.00) | 253.31 |
| 39. Texture drywall - light hand texture | 593.43 SF | 1.15 | 3.32 | 205.74 | 891.50 | (0.00) | 891.50 |
| 40. Texture drywall - heavy hand texture | 593.43 SF | 1.70 | 7.89 | 305.00 | 1,321.72 | (0.00) | 1,321.72 |
| 41. Mask the floor per square foot - plastic and tape - 4 mil | 593.43 SF | 0.29 | 2.49 | 52.36 | 226.94 | (0.00) | 226.94 |
| Protect the ceiling and walls to apply the texture | | | | | | | |
| 42. Seal the ceiling w/latex based stain blocker - one coat | 593.43 SF | 0.71 | 3.32 | 127.40 | 552.06 | (0.00) | 552.06 |
| 43. Paint the ceiling - two coats | 593.43 SF | 1.18 | 12.88 | 213.94 | 927.07 | (0.00) | 927.07 |
| 44. Mask and prep for paint - tape only (per LF) | 90.23 LF | 0.72 | 0.32 | 19.60 | 84.89 | (0.00) | 84.89 |
| Mask the ceiling to paint the walls | | | | | | | |
| 45. Detach & Reset Heat/AC register - Mechanically attached | 2.00 EA | 18.69 | 0.00 | 11.22 | 48.60 | (0.00) | 48.60 |
| 46. Detach & Reset Smoke detector | 1.00 EA | 60.60 | 0.00 | 18.18 | 78.78 | (0.00) | 78.78 |
| **Electric** | | | | | | | |
| 47. Detach & Reset Ceiling fan without light | 1.00 EA | 222.90 | 0.00 | 66.88 | 289.78 | (0.00) | 289.78 |
| 48. Detach & Reset Recessed light fixture | 2.00 EA | 131.22 | 0.00 | 78.74 | 341.18 | (0.00) | 341.18 |
| 49. Detach & Reset Hanging light fixture | 1.00 EA | 62.59 | 0.00 | 18.78 | 81.37 | (0.00) | 81.37 |
| | | | | | | | |
| **Totals: Family Room** | | | **30.67** | **1,176.30** | **5,097.20** | **0.00** | **5,097.20** |

### Cloud 9 Claims LLC

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560



**Living Room**  **Height: Tray**

| | |
|---|---|
| 447.68 SF Walls | 271.97 SF Ceiling |
| 719.65 SF Walls & Ceiling | 234.44 SF Floor |
| 26.05 SY Flooring | 45.48 LF Floor Perimeter |
| 61.47 LF Ceil. Perimeter | |

**Missing Wall**    **15' 11 13/16" X 9' 10"**    **Opens into KITCHEN**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Ceiling** | | | | | | | |
| 50.  Texture drywall - light hand texture | 271.97 SF | 1.15 | 1.52 | 94.30 | 408.59 | (0.00) | 408.59 |
| 51.  Texture drywall - heavy hand texture | 271.97 SF | 1.70 | 3.62 | 139.78 | 605.75 | (0.00) | 605.75 |
| 52.  Mask the floor per square foot - plastic and tape - 4 mil | 234.44 SF | 0.29 | 0.98 | 20.70 | 89.67 | (0.00) | 89.67 |
| Protect the ceiling and walls to apply the texture | | | | | | | |
| 53.  Seal the ceiling w/latex based stain blocker - one coat | 271.97 SF | 0.71 | 1.52 | 58.40 | 253.02 | (0.00) | 253.02 |
| 54.  Paint the ceiling - two coats | 271.97 SF | 1.18 | 5.90 | 98.06 | 424.88 | (0.00) | 424.88 |
| 55.  Mask and prep for paint - tape only (per LF) | 61.47 LF | 0.72 | 0.21 | 13.34 | 57.81 | (0.00) | 57.81 |
| Mask the ceiling to paint the walls | | | | | | | |
| 56.  Detach & Reset Heat/AC register - Mechanically attached | 2.00 EA | 18.69 | 0.00 | 11.22 | 48.60 | (0.00) | 48.60 |
| 57.  Detach & Reset Smoke detector | 1.00 EA | 60.60 | 0.00 | 18.18 | 78.78 | (0.00) | 78.78 |
| **Electric** | | | | | | | |
| 58.  Detach & Reset Ceiling fan & light | 1.00 EA | 222.90 | 0.00 | 66.88 | 289.78 | (0.00) | 289.78 |
| 59.  Detach & Reset Recessed light fixture | 2.00 EA | 131.22 | 0.00 | 78.74 | 341.18 | (0.00) | 341.18 |
| **Totals:  Living Room** | | | **13.75** | **599.60** | **2,598.06** | **0.00** | **2,598.06** |



**Kitchen**  **Height: Sloped**

| | |
|---|---|
| 386.88 SF Walls | 246.44 SF Ceiling |
| 633.32 SF Walls & Ceiling | 243.42 SF Floor |
| 27.05 SY Flooring | 35.81 LF Floor Perimeter |
| 53.90 LF Ceil. Perimeter | |

**Missing Wall**    **15' 11 13/16" X 9' 10"**    **Opens into LIVING_ROOM2**
**Missing Wall**    **17' 9 3/16" X 9' 10"**    **Opens into FAMILY_ROOM**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Ceiling** | | | | | | | |
| 60.  Texture drywall - light hand texture | 246.44 SF | 1.15 | 1.38 | 85.44 | 370.23 | (0.00) | 370.23 |

WINDSOR_GARY

12/14/2022    Page: 5

**Cloud 9 Claims LLC**

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

**CONTINUED - Kitchen**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 61. Texture drywall - heavy hand texture | 246.44 SF | 1.70 | 3.28 | 126.66 | 548.89 | (0.00) | 548.89 |
| 62. Mask the floor per square foot - plastic and tape - 4 mil | 243.42 SF | 0.29 | 1.02 | 21.48 | 93.09 | (0.00) | 93.09 |
| Protect the ceiling and walls to apply the texture | | | | | | | |
| 63. Seal the ceiling w/latex based stain blocker - one coat | 246.44 SF | 0.71 | 1.38 | 52.92 | 229.27 | (0.00) | 229.27 |
| 64. Paint the ceiling - two coats | 246.44 SF | 1.18 | 5.35 | 88.84 | 384.99 | (0.00) | 384.99 |
| 65. Mask and prep for paint - tape only (per LF) | 53.90 LF | 0.72 | 0.19 | 11.70 | 50.70 | (0.00) | 50.70 |
| Mask the ceiling to paint the walls | | | | | | | |
| 66. Detach & Reset Heat/AC register - Mechanically attached | 3.00 EA | 18.69 | 0.00 | 16.82 | 72.89 | | 72.89 |
| 67. Detach & Reset Smoke detector | 1.00 EA | 60.60 | 0.00 | 18.18 | 78.78 | | 78.78 |
| Electric | | | | | | | |
| 68. Detach & Reset Ceiling fan & light | 1.00 EA | 222.90 | 0.00 | 66.88 | 289.78 | | 289.78 |
| 69. Detach & Reset Hanging light fixture | 1.00 EA | 62.59 | 0.00 | 18.78 | 81.37 | | 81.37 |
| **Totals: Kitchen** | | | **12.60** | **507.70** | **2,199.99** | **0.00** | **2,199.99** |
| **Total: Interior** | | | **57.02** | **2,765.68** | **11,984.27** | **0.00** | **11,984.27** |

**Exterior**



| Exterior | | | | | | Height: 10' |
|---|---|---|---|---|---|---|

3178.93  SF Walls                              3408.68  SF Ceiling
6587.60  SF Walls & Ceiling             3408.68  SF Floor
378.74  SY Flooring                           317.89  LF Floor Perimeter
317.89  LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 70. Painting (Bid Item Delarca Handyman Services LLC)* | 1.00 EA | 7,800.00 | 0.00 | 0.00 | 7,800.00 | (0.00) | 7,800.00 |
| **Totals: Exterior** | | | **0.00** | **0.00** | **7,800.00** | **0.00** | **7,800.00** |
| **Total: Exterior** | | | **0.00** | **0.00** | **7,800.00** | **0.00** | **7,800.00** |

### Cloud 9 Claims LLC

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

**Labor Minimums Applied**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 71.  Heat, vent, & air cond. labor minimum* | 1.00 EA | 181.68 | 0.00 | 54.50 | 236.18 | (0.00) | 236.18 |
| 72.  Stucco or exterior plaster labor minimum | 1.00 EA | 119.44 | 0.00 | 35.84 | 155.28 | (0.00) | 155.28 |
| **Totals:  Labor Minimums Applied** | | | **0.00** | **90.34** | **391.46** | **0.00** | **391.46** |
| **Line Item Totals:  WINDSOR_GARY** | | | **3,342.83** | **53,353.80** | **246,697.74** | **0.00** | **246,697.74** |

| Additional Charges | Charge |
|---|---|
| Permit | 2,466.98 |
| **Additional Charges Total** | **$2,466.98** |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 5,485.60 | SF Walls | 4,930.64 | SF Ceiling | 10,416.24 | SF Walls and Ceiling |
| 4,890.09 | SF Floor | 543.34 | SY Flooring | 529.86 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 563.93 | LF Ceil. Perimeter |
| 4,890.09 | Floor Area | 4,947.71 | Total Area | 5,485.60 | Interior Wall Area |
| 5,630.36 | Exterior Wall Area | 530.53 | Exterior Perimeter of Walls | | |
| 4,986.92 | Surface Area | 49.87 | Number of Squares | 381.85 | Total Perimeter Length |
| 100.48 | Total Ridge Length | 299.44 | Total Hip Length | | |

WINDSOR_GARY                                                    12/14/2022        Page: 7

**Cloud 9 Claims LLC**

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

## Summary

| | |
|---|---:|
| Line Item Total | 190,001.11 |
| Permit | 2,466.98 |
| Material Sales Tax | 3,445.03 |
| Subtotal | 195,913.12 |
| Overhead | 27,072.85 |
| Profit | 27,072.85 |
| Laundering Tax | 70.49 |
| **Replacement Cost Value** | **$250,129.31** |
| Less Deductible | (6,888.00) |
| **Net Claim** | **$243,241.31** |

_____

Steven H

## Cloud 9 Claims LLC

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

### Recap of Taxes, Overhead and Profit

| | Overhead (15%) | Profit (15%) | Material Sales Tax (7%) | Laundering Tax (2%) | Manuf. Home Tax (6%) | Storage Rental Tax (7%) |
|---|---|---|---|---|---|---|
| **Line Items** | | | | | | |
| | 26,676.90 | 26,676.90 | 3,272.34 | 70.49 | 0.00 | 0.00 |
| **Additional Charges** | | | | | | |
| | 395.95 | 395.95 | 172.69 | 0.00 | 0.00 | 0.00 |
| **Total** | | | | | | |
| | **27,072.85** | **27,072.85** | **3,445.03** | **70.49** | **0.00** | **0.00** |

## Cloud 9 Claims LLC

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

### Recap by Room

**Estimate: WINDSOR_GARY**

| | | |
|---|---:|---:|
| **Area: Main Level** | **32,293.56** | **17.00%** |
| Roof1 | **140,444.86** | **73.92%** |
| | | |
| Area Subtotal:  Main Level | **172,738.42** | **90.91%** |
| **Area: Interior** | **1,606.94** | **0.85%** |
| Family Room | **3,890.23** | **2.05%** |
| Living Room | **1,984.71** | **1.04%** |
| Kitchen | **1,679.69** | **0.88%** |
| | | |
| Area Subtotal:  Interior | **9,161.57** | **4.82%** |
| **Area: Exterior** | | |
| Exterior | **7,800.00** | **4.11%** |
| | | |
| Area Subtotal:  Exterior | **7,800.00** | **4.11%** |
| Labor Minimums Applied | **301.12** | **0.16%** |
| **Subtotal of Areas** | **190,001.11** | **100.00%** |
| | | |
| **Total** | **190,001.11** | **100.00%** |

WINDSOR_GARY

12/14/2022     Page: 10

**Cloud 9 Claims LLC**

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| CONT: GARMENT & SOFT GOODS CLN | 2,711.20 | 1.08% |
| CLEANING | 2,410.62 | 0.96% |
| GENERAL DEMOLITION | 24,678.73 | 9.87% |
| DRYWALL | 3,363.15 | 1.34% |
| ELECTRICAL | 181.80 | 0.07% |
| HEAVY EQUIPMENT | 1,004.00 | 0.40% |
| FRAMING & ROUGH CARPENTRY | 485.76 | 0.19% |
| HEAT, VENT & AIR CONDITIONING | 312.51 | 0.12% |
| LIGHT FIXTURES | 1,318.76 | 0.53% |
| LANDSCAPING | 2,365.00 | 0.95% |
| PAINTING | 2,721.97 | 1.09% |
| SWIMMING POOLS & SPAS | 4,925.00 | 1.97% |
| ROOFING | 111,384.80 | 44.53% |
| SCAFFOLDING | 880.00 | 0.35% |
| SOFFIT, FASCIA, & GUTTER | 4,410.37 | 1.76% |
| STUCCO & EXTERIOR PLASTER | 300.64 | 0.12% |
| TEMPORARY REPAIRS | 119.00 | 0.05% |
| USER DEFINED ITEMS | 11,000.00 | 4.40% |
| **O&P Items Subtotal** | **174,573.31** | **69.79%** |

| Non-O&P Items | Total | % |
|---|---|---|
| CLEANING | 3,013.80 | 1.20% |
| PAINTING | 7,800.00 | 3.12% |
| WINDOW TREATMENT | 4,614.00 | 1.84% |
| **Non-O&P Items Subtotal** | **15,427.80** | **6.17%** |
| **O&P Items Subtotal** | **174,573.31** | **69.79%** |
| Permits and Fees | 2,466.98 | 0.99% |
| Material Sales Tax | 3,445.03 | 1.38% |
| Overhead | 27,072.85 | 10.82% |
| Profit | 27,072.85 | 10.82% |
| Laundering Tax | 70.49 | 0.03% |
| **Total** | **250,129.31** | **100.00%** |

*Please respond to any denials in writing and address the line item specifically. Please also be advised, it is not the insured's duty, nor their Public Adjuster to determine ACV Value on behalf of the Insurer. That is the insurer's responsibility. Their Proof of Loss will always reflect the R CV value, as it should. If there are any questions, please contact us at any of the given numbers on the Header. If the insurer*

WINDSOR_GARY                                         12/14/2022          Page: 11

**Cloud 9 Claims LLC**

4850 Tamiami Trail N suite 301
Naples, FL 34103
888-483-3560

*wishes to provide their schedule, we would be  willing to apply, provided the schedule is correct.*

*The insured(s) reserve(s) all rights he/she/they may have under the insurance policy, including, but not limited to, supplementing the claim/or filing additional Proofs of Loss, should cause arise. The Proof of Loss does not address any hidden damages or complications or additional costs that may be associated with any repair/replacement of the damages to the insured(s) property. If any part of this proof of loss does not comply with any policy conditions, you are hereby instructed to inform the public adjuster and insured(s) within 15 days from the date of the Proof of Loss, or any deficiencies will be considered waived.*

12/14/2022



Living Room

Kitchen

Family Room

WINDSOR_GARY

Exterior

lanai

Exterior

Page: 15

12/14/2022

Exterior

WINDSOR_GARY